TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00077-CV






Nanci L. MacFarlane; Susan T. Warren; and Plaques Plus, Inc., Appellants




v.



Curt Friedland d/b/a Curt Friedland & Associates; Curt Friedland, Individually;

Sprott, Inc., d/b/a Century 21 Sprott & Associates; Jack N. Sprott,

Individually; and Bonnie Kuvet, Individually, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. 95-12242, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 Appellants, Nanci L. MacFarlane, Susan T. Warren, and their business, Plaques Plus,
Inc. (together "MacFarlane"), appeal district-court orders dismissing their action against appellees
Curt Friedland (individually and doing business as Curt Friedland & Associates), Sprott, Inc. (doing
business as Century 21 Sprott & Associates), Jack N. Sprott, and Bonnie Kuvet (together
"Friedland") and overruling their motion to reinstate their cause. On appeal, MacFarlane contends
that the district court (1) inappropriately exercised the court's inherent power to dismiss, (2) abused
the court's discretion in dismissing MacFarlane's claims, and (3) erred in failing to reinstate
MacFarlane's claims. We will reverse the district-court orders and remand the cause for further
proceedings.


FACTUAL AND PROCEDURAL BACKGROUND


 In 1994, MacFarlane purchased property in Austin to house Plaques Plus, Inc., a
business engaged in the fabrication of trophies and awards. MacFarlane claims that Curt Friedland,
a property appraiser, and Jack Sprott and Bonnie Kuvet, realtors involved in the transaction,
represented on numerous occasions that the property was zoned by the City of Austin ("the City")
as "limited office," allowing commercial use, and would be suitable for Plaques Plus. Based on
these assurances, MacFarlane purchased the property, paying commercial value, and began
conducting business. Several months later, MacFarlane discovered that the City considered the
property zoned for residential purposes only, rendering her in noncompliance with city zoning laws.

 MacFarlane filed suit in 1995, claiming reliance on Friedland's misrepresentations
regarding the zoning classification, (1) that the misrepresentations violated the Texas Deceptive Trade
Practices Act ("DTPA") (2) or were negligent misrepresentations, and that the misrepresentations
constituted a breach of fiduciary duty. The case was set for trial in January 1998, but the district
court ordered the cause abated "until such time as Plaintiffs have applied for the correct zoning to
the City Council and have received a final decision from the City of Austin regarding that zoning
application."

 In the spring of 1998, MacFarlane hired Bruce Melton ("Melton"), an engineer with
experience in zoning matters, to obtain the proper zoning. Her attorney, Bobby Taylor ("Taylor"),
testified (3) that Melton was to inform him when zoning was complete so that Taylor could set the case
for trial.

 On November 11, 1998, the City approved commercial zoning with conditional
overlay ("CS-CO") on first reading. The City requires that second and third readings take place
within 361 days of first reading in order for a zoning change to take effect. The conditional overlay 
required MacFarlane to (1) sign a restrictive covenant that she would not protest rezoning to LR-CO
if her use of the property ceased for more than ninety days and (2) provide field notes for the
property being zoned. Because the requirements were not completed by November 15, 1999,
MacFarlane's zoning-change application expired.

 Taylor and his legal assistant, Annie Campos ("Campos"), testified to the frequent
and continuous contact MacFarlane maintained with them throughout the zoning process, thus
asserting her diligence in obtaining the proper zoning and satisfying the conditions of the abatement
order. Melton testified that appellant Susan Warren "stayed on him," although he contradicted
himself by also saying that MacFarlane "did not keep very close contact with me." Campos testified
that she relayed information among Melton, Taylor, and MacFarlane. Melton corroborated
Campos's frequent contact with him. Campos testified that she called Melton to inquire about the
status of the zoning process "every two to three months . . . or if the client called and asked what the
status was or let me know that she was having difficulty communicating with Bruce Melton, I would
call Bruce Melton . . . ; or if we hadn't heard anything, I would try and call his office." Campos
relayed her conversations to MacFarlane and Taylor, and if the conversation was particularly
significant, she placed a note in MacFarlane's file. Despite this consistent communication, both
Taylor and Campos testified that they were never made aware that CS-CO zoning had received first-reading approval; Taylor stated that his first notice of this occurrence was when Friedland filed the
motion to dismiss on July 7, 2000.

 A fire at Taylor's office in mid-December 1999, which was later attributed to arson,
greatly disrupted his law practice. Taylor moved recovered files into storage and conducted business
as best he could from a temporary location until he resumed practicing in his partially refurbished
office in March, 2000. (4) Taylor and Campos testified that their communication with MacFarlane did
not cease during the post-fire period. Campos testified that on January 4, 2000, Melton told her that
he needed sixteen to twenty-two more weeks to complete the zoning process. Melton testified that
he formalized this discussion by sending a proposed contract for additional services to MacFarlane
in care of Taylor. Taylor received the contract on January 7 and forwarded it to MacFarlane. Melton
testified that he last spoke with MacFarlane in either January or February, and that she never signed
or returned the contract.

 Upon discovering that MacFarlane had sold the property on April 3, Friedland, on
July 7, filed a motion to dismiss MacFarlane's action for want of prosecution, alleging that
MacFarlane (1) never followed through with the CS-CO zoning, and that the time to do so had
expired; (2) did not seek proper zoning under the terms of a newly enacted city ordinance; (5) (3) failed
to supplement discovery or inform appellees of the status of the zoning process after the abatement
order; (4) abandoned her causes of action when she sold the property; and (5) the case had been
pending under these circumstances for five years and should be dismissed pursuant to Texas Rule
of Civil Procedure 165a.

 After receiving the motion to dismiss, MacFarlane scheduled the case for a February
26, 2001, trial. However, the district court granted the motion to dismiss. MacFarlane filed a motion
to reinstate, arguing that the delay in bringing the case to trial was not intentional or the result of
conscious indifference but was due to the obstacles Taylor faced when he was the victim of arson. 
Furthermore, Taylor testified that he was under the impression that the zoning matter was still being
processed, as Melton had not conveyed information to the contrary to him; thus the abatement order
was not satisfied. Characterizing the dismissal as one "based on Plaintiffs' failure to prosecute their
claims for relief for due diligence," the district court denied MacFarlane's motion to reinstate. By three issues, MacFarlane contends that the district court erred in granting
Friedland's motion to dismiss and in denying her motion to reinstate.


STANDARD OF REVIEW


 Trial courts possess the authority to dismiss a case for want of prosecution pursuant
to both inherent power and the provisions of Rule 165a of the Texas Rules of Civil Procedure. See
Tex. R. Civ. P. 165a (permitting dismissal for (1) failure to appear at hearing or trial, (2) failure to
meet time standards promulgated by supreme court, and (3) lack of diligence); State v. Rotello, 671
S.W.2d 507, 508-09 (Tex. 1984) (stating that trial court has inherent power to dismiss for lack of due
diligence); Veteran's Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex. 1976) (stating that Rule 165a
is not exclusive authority for trial court's dismissal power, but that court also has inherent power to
dismiss suit for failure to prosecute with due diligence without statutory or rule authority) (citing
Bevil v. Johnson, 307 S.W.2d 85, 87 (Tex. 1957)); see also Burton v. Hoffman, 959 S.W.2d 351, 353
(Tex. App.--Austin 1998, no pet.). The dismissal procedures under Rule 165a are cumulative and
independent. Tex. R. Civ. P. 165a(4); Williams, 543 S.W.2d at 90. Furthermore, the trial court's
inherent power to dismiss a suit for failure to prosecute with due diligence is separate and apart from
the statutory authority under Rule 165a. Williams, 543 S.W.2d at 90; Burton, 959 S.W.2d at 353.

 We review a trial court's action on a motion to dismiss a cause for want of
prosecution and the court's failure to reinstate the cause under a clear-abuse-of-discretion standard,
the central issue being whether an appellant exercised reasonable diligence, not whether it intended
to abandon its claims. MacGregor v. Rich, 941 S.W.2d 74, 75 (Tex. 1997) (citing Williams, 543
S.W.2d at 90). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and
without reference to any guiding rules and principles. Goode v. Shoukfeh, 943 S.W.2d 441, 446
(Tex. 1997) (quoting Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996)). The
decision as to whether a trial court abused its discretion is made on a case-by-case basis, considering
the entire history of the case. FDIC v. Kendrick, 897 S.W.2d 476, 481-82 (Tex. App.--Amarillo
1995, no writ) (stating further that no single factor is dispositive); Olin Corp. v. Coastal Water Auth.,
849 S.W.2d 852, 856 (Tex. App.--Houston [1st Dist.] 1993, no writ) (appellate court reviews record
in its entirety to determine whether dismissal is appropriate). Where, as here, the record contains
no findings of fact or conclusions of law and the trial court did not state its reasons for the dismissal,
the order of dismissal must be affirmed if any legal theory is supported by the record. City of
Houston v. Thomas, 838 S.W.2d 296, 297 (Tex. App.--Houston [1st Dist.] 1992, no writ).


DISCUSSION


Adequate Notice of Grounds for Dismissal


 By her first issue, MacFarlane argues that the district court abused her discretion in
dismissing MacFarlane's cause by invoking the court's inherent dismissal power and dismissing for
failure to prosecute with due diligence. (6) MacFarlane contends that the sole basis of Friedland's
motion was Texas Rule of Civil Procedure 165a(2). See Tex. R. Civ. P. 165a(2) ("Any case not
disposed of within time standards promulgated by the Supreme Court under its Administrative Rules
may be placed on the dismissal docket."). She asserts that by pleading for dismissal under Rule
165a(2), Friedland did not invoke the district court's inherent dismissal power.

 Although one paragraph of Friedland's motion to dismiss urged the district court to
dismiss the claims "[p]ursuant to Tex. R. Civ. P., Rule 165a . . . as Plaintiffs have failed to prosecute
this claim with any alacrity, as directed by the Court" and specifically asserted that MacFarlane's
cause had been pending for a "time period . . . far outside the time standards promulgated by the
Texas Supreme Court in its Rules of Judicial Administration," (7) Friedland, elsewhere in the motion,
alleged that MacFarlane had not diligently pursued her zoning request and failed to supplement her
responses to previously propounded discovery requests. The motion further accused MacFarlane of
abandoning her cause of action and the real property involved. The motion's prayer generally
requested that the motion "be granted, and that [MacFarlane's] claims against [Friedland] be
dismissed in their entirety, without prejudice to [refiling] of same." The motion thus did not argue
for dismissal solely on the basis of Rule 165a(2). Even though Friedland mentioned the lack of
adherence to the supreme court's time standards, the thrust of his pleadings was that MacFarlane
failed to diligently pursue her claims, as partially evidenced by the passage of a lengthy period of
time. This was sufficient to place MacFarlane on notice that she was in danger of having her cause
dismissed for general lack of diligence in prosecuting it. Texas courts construe pleadings liberally
in favor of the pleader and require only that the pleader give the opposing party sufficient
information with which to prepare a response. Cf. Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)
("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases
his claim. The purpose of this rule is to give the opposing party information sufficient to enable him
to prepare a defense."). We hold that Friedland's pleadings were sufficient to put MacFarlane on
notice of the grounds under which Friedland sought dismissal and overrule MacFarlane's first issue.


Appropriateness of Dismissal



 Because abuse of discretion is the correct standard of review for both dismissal for
want of prosecution and the overruling of a motion to reinstate, we consider MacFarlane's second
and third issues together. MacFarlane's second issue argues that (1) she used due diligence in
pursuing the requirements of the abatement order, and (2) any delay in the pursuit of her claims
between January and August 2000 was justified, as the delay was not intentional or the result of
conscious indifference but was caused by the impediments to practicing law that Taylor experienced
as a result of the arson of his office. MacFarlane contends that for these reasons, dismissal was
improper under either Rule 165a(2) or the court's inherent power. By her third issue, MacFarlane
argues that the same facts making dismissal an abuse of discretion also make the district court's
failure to reinstate an abuse of discretion. We will sustain MacFarlane's second and third issues.


Effect of the Abatement Order

 Although we believe that MacFarlane used due diligence in prosecuting her claims,
we base our holding primarily on the fact that the district court dismissed MacFarlane's case while
the court's abatement order was still in effect. Because dismissal is the most severe penalty, we


view this case mindful of the mandate of Tex. R. Civ. P. 1. Rule 1 provides that the
purpose of the Rules of Civil Procedure is to obtain a fair, just, and equitable
adjudication of rights under established principles of substantive law. The tension
between the objective of rule 1 and the inherent power of the trial judge to control the
court's docket may be impossible to resolve with absolute precision, but a just
resolution of cases generally prefers trial over dismissal.



Olin, 849 S.W.2d at 858.

 The district court neither lifted nor modified the abatement order. "An abatement is
a present suspension of all proceedings in a suit. The case is held in suspended animation and may
be revived when the reason for abatement is removed. During abatement, the court and the parties
are prohibited from proceeding in any manner." Campbell v. Kosarek, 44 S.W.3d 647, 650 (Tex.
App.--Dallas 2001, pet. denied) (emphasis added) (internal citations omitted). Indeed, this Court
has recognized that it is improper to dismiss a case that has been abated, but rather the trial court
should "retain it suspended upon the docket, subject to be revived if and when the cause of
abatement is removed." Dyches v. Ellis, 199 S.W.2d 694, 696 (Tex. Civ. App.--Austin 1947, no
writ); accord Messmer v. State Farm County Mut. Ins. Co., 972 S.W.2d 774, 778 (Tex.
App.--Corpus Christi 1998, no pet); In re Kimball Hill Homes Tex., Inc., 969 S.W.2d 522, 527 (Tex.
App.--Houston [14th Dist.] 1998, orig. proceeding); America Online, Inc. v. Williams, 958 S.W.2d
268, 272 (Tex. App.--Houston [14th Dist.] 1997, no pet.); Permanente Med. Ass'n v. Johnson, 917
S.W.2d 515, 517 (Tex. App.--Waco 1996, orig. proceeding); Lumbermens Mut. Cas. Co. v. Garza,
777 S.W.2d 198, 199 (Tex. App.--Corpus Christi 1989, orig. proceeding). However, courts have
recognized an exception, stating that dismissal is proper when "a plaintiff fails to correct a defect or
impediment to suit after an abatement has been granted." 3V, Inc. v JTS Enters., Inc., 40 S.W.3d
533, 540 (Tex. App.--Houston [14th Dist.] 2000, no pet.); Garcia-Marroquin v. Nueces County Bail
Bond Bd., 1 S.W.3d 366, 374 (Tex. App.--Corpus Christi 1988, no writ); M&M Const. Co. v. Great
Am. Ins. Co., 747 S.W.2d 552, 554-55(Tex. App.--Corpus Christi 1988, no writ).

 Although 3V, Garcia-Marroquin, and M&M Construction each recognize that an
isolated situation could exist whereby dismissal during the abatement period would be appropriate,
dismissal was not deemed proper in any of the cases. 3V, 40 S.W.3d at 543-544; Garcia-Marroquin,
1 S.W.3d at 374; M & M Constr., 747 S.W.3d at 555. Similarly, no exception applies here that
would permit the district court to dismiss the case.

 The order specified that the cause was abated "until such time as Plaintiffs have
applied for the correct zoning to the City Council and have received a final decision from the City
of Austin regarding that zoning application." (Emphasis added.) Friedland and MacFarlane disagree
over what precise zoning status was required to satisfy the district-court order, and the order itself
provides no guidance in this regard. All parties agree that MacFarlane was to exhaust her
administrative remedies, but by affidavit, MacFarlane testified that she pursued CS zoning because
it was the only zoning status that would not severely limit her business; thus, to MacFarlane, CS
zoning was the "correct zoning" required by the abatement order.

 Friedland asserted that a final ruling on any zoning designation, not specifically CS
zoning, would satisfy the terms of the abatement order. Relying on this interpretation, Friedland
argued that MacFarlane squandered an opportunity to satisfy the abatement order when she failed
to act within 361 days from November 19, 1998, when the City tentatively approved CS-CO zoning. 
Friedland further relied on the testimony of Melton and Antonio Gonzales ("Gonzales"), the City's
case manager in charge of MacFarlane's zoning application. Gonzales testified that CS-CO zoning
allowed MacFarlane to fully operate her business. MacFarlane disagreed because there was no
explicit written provision guaranteeing her the use of three-horsepower machinery required by her
business, and Melton acknowledged that he would not be surprised if none of the documents before
the district court stated that three-horsepower engines could be used because the City's zoning is
"confusing." Taylor testified that Melton's informing him that the zoning process was complete
would serve as the trigger mechanism for going to trial. However, by MacFarlane's interpretation
of the abatement order, proper zoning was never obtained; thus the requisite event never occurred
that would cause her to move the district court to lift the abatement order and set the cause for trial. 
MacFarlane's expectation that her case was still in a state of suspension until proper zoning was
obtained was reasonable.

 Friedland also argues that MacFarlane effectively abandoned her claims when she
sold the property because she lacked standing to pursue a zoning change for the property and
therefore could not satisfy the abatement order. Because an action is revived when the cause of
abatement is removed, Friedland is incorrect. Dyches, 199 S.W.2d at 696. MacFarlane's alleged
lack of standing before the City to pursue the zoning change may have obviated the abatement but
did not necessarily render her cause of action moot.

 Furthermore, MacFarlane testified that she would have been leery of signing the
conditional overlay's restrictive covenant because it "would limit our future abilities to market the
property." She further observed that CS-CO zoning would "severely limit our business," precluding
her from expanding and from conducting certain aspects of the business outside the building located
on the property, as the outside portion of the property would remain zoned LR. Essentially,
MacFarlane's affidavit indicated that pursuing CS-CO zoning through final passage would saddle
her with a zoning status that would unacceptably inhibit her business practices.

 We do not decide which party's construction of the abatement order is the most
reasonable. The order is clearly subject to differing interpretations of what needed to occur to
terminate the abatement. By any construction, MacFarlane's cause was still subject to the abatement
order at the time is was dismissed. Under the facts of this case, we hold that the district court erred
in dismissing MacFarlane's action without first reconsidering or lifting the abatement order.


MacFarlane's Diligence

 Friedland argues that MacFarlane admits that she took no affirmative action in the
district court between the time that Melton requested additional funds--January 2000--and the time
he filed his motion to dismiss--July 7, 2000,--thus reflecting a lack of diligence in prosecution on
MacFarlane's part for at least this eight-month period. Friedland also urges this Court to examine
the case's entire district-court history since its filing in 1995. The district-court order does not reflect
a particular period of inaction on which the court based her decision to dismiss. See Ellmossallamy
v. Huntsman, 830 S.W.2d 299, 300 (Tex. App.--Houston [14th Dist.] 1992, no writ) (stating that
reviewing court's focus must "essentially be directed at that period of time" on which trial court
based its decision to dismiss). However, in order to place any particular period of inactivity in the
proper perspective, we examine the context of the whole case. Id. (citing Rotello, 671 S.W.2d at
509; Fedco Oil Co. v. Pride Refining Co., 787 S.W.2d 572, 573 (Tex. App.--Houston [14th Dist.]
1990, no writ)). The passage of time alone does not necessarily indicate a lack of diligence. See,
e.g., Fedco, 787 S.W.2d at 574-75 (holding that even though case had been pending for eight years,
dismissal was abuse of discretion because record established appellant made diligent effort to bring
case to trial).

 We need not further discuss the circumstances surrounding the abatement order, other
than to observe that MacFarlane's action was abated by the district court in January 1998 to allow
her to seek a zoning change for her property. There was action by the City in November 1998
tentatively changing the property's zoning to a classification that MacFarlane now asserts was still
unacceptable to her, but which had the effect of keeping her zoning-change application before the
City at least until November 1999.

 In December 1999, MacFarlane's attorney, was the victim of arson. Although he tried
to handle his clients' business from a temporary location without complete access to his files, he was
not able to return to his office until late March 2000 and still did not have full use of his files, many
of which were in temporary storage. During January 2000, there was contact with Melton, which
Taylor testified led him to believe that eighteen to twenty-two more weeks would be required to
complete the zoning change.

 Of significance here is the fact that the abatement order suspending activity in the
case until "a final decision from the City of Austin regarding [the] zoning application" was still in
place. We further observe that arson is not an everyday occurrence for a lawyer, and some latitude
must be allowed for the disruption and confusion that a fire causes to the day-to-day operation of a
law office. A trial court's right to dismiss a suit for failure to prosecute it with due diligence "is not
an unbridled discretion, but a judicial discretion subject to review." Ellmossallamy, 830 S.W.2d at
301 (citing William T. Jarvis Co. v. Wes-Tex Grain Co., 548 S.W.2d 775, 778 (Tex. Civ.
App.--Waco 1977, writ ref'd n.r.e.)).

 The specific and unusual circumstances of this case lead us to conclude that
MacFarlane has demonstrated the diligence necessary to entitle her to her day in court.


CONCLUSION


 We sustain MacFarlane's second and third issues, reverse the district court's orders,
and remand this cause to the district court for further proceedings consistent with this opinion.



 ___________________________________________

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

Reversed and Remanded

Filed: January 17, 2002

Do Not Publish
1. Because various zoning classifications are referred to in this opinion, simplified
descriptions of the classifications follow. Commercial zoning ("CS") is full commercial zoning
without special restrictions. Local retail ("LR") allows less commercial activity than CS but more
than limited office ("LO"), which is the most confining commercial-zoning status relevant here. 
Commercial zoning with conditional overlay ("CS-CO") is commercial zoning, but with special
restrictions designed to address any unique characteristics of the property. A conditional overlay
("CO") places additional restrictions or requirements on a particular property subject to a zoning
designation. 
2. See Tex. Bus. & Com. Code Ann. § 17.46(b) (West 1987). Section 17.46 of the
business and commerce code was amended in 2001. See Act of May 27, 2001, 77th Leg., R.S.,
ch. 962, § 1, sec. 17.46(b), 2001 Tex. Sess. Law Serv. 1820, 1821-22 (West) (to be codified as
an amendment to Tex. Bus. & Com. Code Ann. § 17.46 (b)). Because the changes are neither
substantive nor deal with deceptive trade practices at issue here, we cite to the former version of
the code for convenience.
3. No record was made of the dismissal hearing; therefore, any testimony referred to in
this opinion was presented at the reinstatement hearing.
4. Campos and Taylor testified that there was extensive fire and smoke damage to the
office, including the floors, ceilings, walls, air conditioning and heating systems, and wiring; all
office equipment, including computers with legal files were destroyed and damaged. Taylor took
only criminal files and the files set for trial with him to his temporary location. The remainder
of the recovered files were chemically treated to prevent their destruction.
5. On October 11, 1999, a new city ordinance became effective allowing for applications
to conduct manufacturing activities in LR zoned areas. Although MacFarlane never applied for
a permit under this ordinance, there is no evidence in the record that she was aware of this option.
6. This allegation apparently arises from language in the district court's "Order of
Dismissal," reciting that the court "considered[] the Defendants' Joint Motion to Dismiss . . .
based on Plaintiffs' failure to prosecute their claims for relief with due diligence." The record
contains neither district-court findings of fact nor conclusions of law.
7. The Texas Supreme Court's Rules of Judicial Administration state that "[d]istrict courts
. . . should, so far as reasonably possible, ensure that all cases are brought to trial or final
disposition . . . within 18 months from appearance date" for a civil jury trial and "[w]ithin 12
months from appearance date" for a civil nonjury trial. Tex. R. Jud. Admin. 6, reprinted in Tex.
Gov't Code Ann., tit. 2 subtit. F app. (West 1998) (emphasis added). Although this case has been
pending for longer than 18 months, the rule does not mandate dismissal after the time period has
elapsed; the plain language of the rule indicates that the supreme court contemplated and provided
for those occasions where it is not reasonable to dispose of a case within 18 months.