# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-01-00077-CV

---

**Nanci L. MacFarlane; Susan T. Warren; and Plaques Plus, Inc., Appellants**

**v.**

**Curt Friedland d/b/a Curt Friedland & Associates; Curt Friedland, Individually; Sprott, Inc., d/b/a Century 21 Sprott & Associates; Jack N. Sprott, Individually; and Bonnie Kuvet, Individually, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. 95-12242, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING

---

Appellants, Nanci L. MacFarlane, Susan T. Warren, and their business, Plaques Plus, Inc. (together "MacFarlane"), appeal district-court orders dismissing their action against appellees Curt Friedland (individually and doing business as Curt Friedland & Associates), Sprott, Inc. (doing business as Century 21 Sprott & Associates), Jack N. Sprott, and Bonnie Kuvet (together "Friedland") and overruling their motion to reinstate their cause. On appeal, MacFarlane contends that the district court (1) inappropriately exercised the court's inherent power to dismiss, (2) abused the court's discretion in dismissing MacFarlane's claims, and (3) erred in failing to reinstate MacFarlane's claims. We will reverse the district-court orders and remand the cause for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1994, MacFarlane purchased property in Austin to house Plaques Plus, Inc., a business engaged in the fabrication of trophies and awards. MacFarlane claims that Curt Friedland, a property appraiser, and Jack Sprott and Bonnie Kuvet, realtors involved in the transaction, represented on numerous occasions that the property was zoned by the City of Austin ("the City") as "limited office," allowing commercial use, and would be suitable for Plaques Plus. Based on these assurances, MacFarlane purchased the property, paying commercial value, and began conducting business. Several months later, MacFarlane discovered that the City considered the property zoned for residential purposes only, rendering her in noncompliance with city zoning laws.

MacFarlane filed suit in 1995, claiming reliance on Friedland's misrepresentations regarding the zoning classification,[1] that the misrepresentations violated the Texas Deceptive Trade Practices Act ("DTPA")[2] or were negligent misrepresentations, and that the misrepresentations constituted a breach of fiduciary duty. The case was set for trial in January 1998, but the district

---

[1] Because various zoning classifications are referred to in this opinion, simplified descriptions of the classifications follow. Commercial zoning ("CS") is full commercial zoning without special restrictions. Local retail ("LR") allows less commercial activity than CS but more than limited office ("LO"), which is the most confining commercial-zoning status relevant here. Commercial zoning with conditional overlay ("CS-CO") is commercial zoning, but with special restrictions designed to address any unique characteristics of the property. A conditional overlay ("CO") places additional restrictions or requirements on a particular property subject to a zoning designation.

[2] *See* Tex. Bus. & Com. Code Ann. § 17.46(b) (West 1987). Section 17.46 of the business and commerce code was amended in 2001. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 962, § 1, sec. 17.46(b), 2001 Tex. Sess. Law Serv. 1820, 1821-22 (West) (to be codified as an amendment to Tex. Bus. & Com. Code Ann. § 17.46 (b)). Because the changes are neither substantive nor deal with deceptive trade practices at issue here, we cite to the former version of the code for convenience.

2

court ordered the cause abated "until such time as Plaintiffs have applied for the correct zoning to the City Council and have received a final decision from the City of Austin regarding that zoning application."

In the spring of 1998, MacFarlane hired Bruce Melton ("Melton"), an engineer with experience in zoning matters, to obtain the proper zoning. Her attorney, Bobby Taylor ("Taylor"), testified[3] that Melton was to inform him when zoning was complete so that Taylor could set the case for trial.

On November 11, 1998, the City approved commercial zoning with conditional overlay ("CS-CO") on first reading. The City requires that second and third readings take place within 361 days of first reading in order for a zoning change to take effect. The conditional overlay required MacFarlane to (1) sign a restrictive covenant that she would not protest rezoning to LR-CO if her use of the property ceased for more than ninety days and (2) provide field notes for the property being zoned. Because the requirements were not completed by November 15, 1999, MacFarlane's zoning-change application expired.

Taylor and his legal assistant, Annie Campos ("Campos"), testified to the frequent and continuous contact MacFarlane maintained with them throughout the zoning process, thus asserting her diligence in obtaining the proper zoning and satisfying the conditions of the abatement order. Melton testified that appellant Susan Warren "stayed on him," although he contradicted himself by also saying that MacFarlane "did not keep very close contact with me." Campos testified that she

---

[3] No record was made of the dismissal hearing; therefore, any testimony referred to in this opinion was presented at the reinstatement hearing.

relayed information among Melton, Taylor, and MacFarlane.  Melton corroborated Campos's frequent contact with him.  Campos testified that she called Melton to inquire about the status of the zoning process "every two to three months . . . or if the client called and asked what the status was or let me know that she was having difficulty communicating with Bruce Melton, I would call Bruce Melton . . . ; or if we hadn't heard anything, I would try and call his office."  Campos relayed her conversations to MacFarlane and Taylor, and if the conversation was particularly significant, she placed a note in MacFarlane's file.  Despite this consistent communication, both Taylor and Campos testified that they were never made aware that CS-CO zoning had received first-reading approval; Taylor stated that his first notice of this occurrence was when Friedland filed the motion to dismiss on July 7, 2000.

A fire at Taylor's office in mid-December 1999, which was later attributed to arson, greatly disrupted his law practice.  Taylor moved recovered files into storage and conducted business as best he could from a temporary location until he resumed practicing in his partially refurbished office in March, 2000.[4]  Taylor and Campos testified that their communication with MacFarlane did not cease during the post-fire period.  Campos testified that on January 4, 2000, Melton told her that he needed sixteen to twenty-two more weeks to complete the zoning process.  Melton testified that he formalized this discussion by sending a proposed contract for additional services to MacFarlane in care of Taylor.  Taylor received the contract on January 7 and forwarded it to MacFarlane.  Melton

---

[4] Campos and Taylor testified that there was extensive fire and smoke damage to the office, including the floors, ceilings, walls, air conditioning and heating systems, and wiring; all office equipment, including computers with legal files were destroyed and damaged.  Taylor took only criminal files and the files set for trial with him to his temporary location.  The remainder of the recovered files were chemically treated to prevent their destruction.

testified that he last spoke with MacFarlane in either January or February, and that she never signed or returned the contract.

Upon discovering that MacFarlane had sold the property on April 3, Friedland, on July 7, filed a motion to dismiss MacFarlane's action for want of prosecution, alleging that MacFarlane (1) never followed through with the CS-CO zoning, and that the time to do so had expired; (2) did not seek proper zoning under the terms of a newly enacted city ordinance;[5] (3) failed to supplement discovery or inform appellees of the status of the zoning process after the abatement order; (4) abandoned her causes of action when she sold the property; and (5) the case had been pending under these circumstances for five years and should be dismissed pursuant to Texas Rule of Civil Procedure 165a.

After receiving the motion to dismiss, MacFarlane scheduled the case for a February 26, 2001, trial. However, the district court granted the motion to dismiss. MacFarlane filed a motion to reinstate, arguing that the delay in bringing the case to trial was not intentional or the result of conscious indifference but was due to the obstacles Taylor faced when he was the victim of arson. Furthermore, Taylor testified that he was under the impression that the zoning matter was still being processed, as Melton had not conveyed information to the contrary to him; thus the abatement order was not satisfied. Characterizing the dismissal as one "based on Plaintiffs' failure to prosecute their claims for relief for due diligence," the district court denied MacFarlane's motion to reinstate.

---

[5] On October 11, 1999, a new city ordinance became effective allowing for applications to conduct manufacturing activities in LR zoned areas. Although MacFarlane never applied for a permit under this ordinance, there is no evidence in the record that she was aware of this option.

5

By three issues, MacFarlane contends that the district court erred in granting Friedland's motion to dismiss and in denying her motion to reinstate.

**STANDARD OF REVIEW**

Trial courts possess the authority to dismiss a case for want of prosecution pursuant to both inherent power and the provisions of Rule 165a of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 165a (permitting dismissal for (1) failure to appear at hearing or trial, (2) failure to meet time standards promulgated by supreme court, and (3) lack of diligence); *State v. Rotello*, 671 S.W.2d 507, 508-09 (Tex. 1984) (stating that trial court has inherent power to dismiss for lack of due diligence); *Veteran's Land Bd. v. Williams*, 543 S.W.2d 89, 90 (Tex. 1976) (stating that Rule 165a is not exclusive authority for trial court's dismissal power, but that court also has inherent power to dismiss suit for failure to prosecute with due diligence without statutory or rule authority) (citing *Bevil v. Johnson*, 307 S.W.2d 85, 87 (Tex. 1957)); *see also Burton v. Hoffman*, 959 S.W.2d 351, 353 (Tex. App.—Austin 1998, no pet.). The dismissal procedures under Rule 165a are cumulative and independent. Tex. R. Civ. P. 165a(4); *Williams,* 543 S.W.2d at 90. Furthermore, the trial court's inherent power to dismiss a suit for failure to prosecute with due diligence is separate and apart from the statutory authority under Rule 165a. *Williams*, 543 S.W.2d at 90; *Burton*, 959 S.W.2d at 353.

We review a trial court's action on a motion to dismiss a cause for want of prosecution and the court's failure to reinstate the cause under a clear-abuse-of-discretion standard, the central issue being whether an appellant exercised reasonable diligence, not whether it intended to abandon its claims. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (citing *Williams*, 543

6

S.W.2d at 90). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). The decision as to whether a trial court abused its discretion is made on a case-by-case basis, considering the entire history of the case. *FDIC v. Kendrick*, 897 S.W.2d 476, 481-82 (Tex. App.—Amarillo 1995, no writ) (stating further that no single factor is dispositive); *Olin Corp. v. Coastal Water Auth.*, 849 S.W.2d 852, 856 (Tex. App.—Houston [1st Dist.] 1993, no writ) (appellate court reviews record in its entirety to determine whether dismissal is appropriate). Where, as here, the record contains no findings of fact or conclusions of law and the trial court did not state its reasons for the dismissal, the order of dismissal must be affirmed if any legal theory is supported by the record. *City of Houston v. Thomas*, 838 S.W.2d 296, 297 (Tex. App.—Houston [1st Dist.] 1992, no writ).

## DISCUSSION

### Adequate Notice of Grounds for Dismissal

By her first issue, MacFarlane argues that the district court abused her discretion in dismissing MacFarlane's cause by invoking the court's inherent dismissal power and dismissing for failure to prosecute with due diligence.[6] MacFarlane contends that the sole basis of Friedland's motion was Texas Rule of Civil Procedure 165a(2). *See* Tex. R. Civ. P. 165a(2) ("Any case not disposed of within time standards promulgated by the Supreme Court under its Administrative Rules

---

[6] This allegation apparently arises from language in the district court's "Order of Dismissal," reciting that the court "considered[] the Defendants' Joint Motion to Dismiss . . . based on Plaintiffs' failure to prosecute their claims for relief with due diligence." The record contains neither district-court findings of fact nor conclusions of law.

may be placed on the dismissal docket."). She asserts that by pleading for dismissal under Rule 165a(2), Friedland did not invoke the district court's inherent dismissal power.

Although one paragraph of Friedland's motion to dismiss urged the district court to dismiss the claims "[p]ursuant to Tex. R. Civ. P., Rule 165a . . . as Plaintiffs have failed to prosecute this claim with any alacrity, as directed by the Court" and specifically asserted that MacFarlane's cause had been pending for a "time period . . . far outside the time standards promulgated by the Texas Supreme Court in its Rules of Judicial Administration,"[7] Friedland, elsewhere in the motion, alleged that MacFarlane had not diligently pursued her zoning request and failed to supplement her responses to previously propounded discovery requests. The motion further accused MacFarlane of abandoning her cause of action and the real property involved. The motion's prayer generally requested that the motion "be granted, and that [MacFarlane's] claims against [Friedland] be dismissed in their entirety, without prejudice to [refiling] of same." The motion thus did not argue for dismissal *solely* on the basis of Rule 165a(2). Even though Friedland mentioned the lack of adherence to the supreme court's time standards, the thrust of his pleadings was that MacFarlane

---

[7] The Texas Supreme Court's Rules of Judicial Administration state that "[d]istrict courts . . . should, *so far as reasonably possible*, ensure that all cases are brought to trial or final disposition . . . within 18 months from appearance date" for a civil jury trial and "[w]ithin 12 months from appearance date" for a civil nonjury trial. Tex. R. Jud. Admin. 6, *reprinted in* Tex. Gov't Code Ann., tit. 2 subtit. F app. (West 1998) (emphasis added). Although this case has been pending for longer than 18 months, the rule does not mandate dismissal after the time period has elapsed; the plain language of the rule indicates that the supreme court contemplated and provided for those occasions where it is not reasonable to dispose of a case within 18 months.

failed to diligently pursue her claims, as partially evidenced by the passage of a lengthy period of time. This was sufficient to place MacFarlane on notice that she was in danger of having her cause dismissed for general lack of diligence in prosecuting it. Texas courts construe pleadings liberally in favor of the pleader and require only that the pleader give the opposing party sufficient information with which to prepare a response. *Cf. Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982) ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense."). We hold that Friedland's pleadings were sufficient to put MacFarlane on notice of the grounds under which Friedland sought dismissal and overrule MacFarlane's first issue.

**Appropriateness of Dismissal**

Because abuse of discretion is the correct standard of review for both dismissal for want of prosecution and the overruling of a motion to reinstate, we consider MacFarlane's second and third issues together. MacFarlane's second issue argues that (1) she used due diligence in pursuing the requirements of the abatement order, and (2) any delay in the pursuit of her claims between January and August 2000 was justified, as the delay was not intentional or the result of conscious indifference but was caused by the impediments to practicing law that Taylor experienced as a result of the arson of his office. MacFarlane contends that for these reasons, dismissal was improper under either Rule 165a(2) or the court's inherent power. By her third issue, MacFarlane argues that the same facts making dismissal an abuse of discretion also make the district court's failure to reinstate an abuse of discretion. We will sustain MacFarlane's second and third issues.

*Effect of the Abatement Order*

Although we believe that MacFarlane used due diligence in prosecuting her claims, we base our holding primarily on the fact that the district court dismissed MacFarlane's case while the court's abatement order was still in effect. Because dismissal is the most severe penalty, we

> view this case mindful of the mandate of Tex. R. Civ. P. 1. Rule 1 provides that the purpose of the Rules of Civil Procedure is to obtain a fair, just, and equitable adjudication of rights under established principles of *substantive* law. The tension between the objective of rule 1 and the inherent power of the trial judge to control the court's docket may be impossible to resolve with absolute precision, but a just resolution of cases generally prefers trial over dismissal.

*Olin*, 849 S.W.2d at 858.

The district court neither lifted nor modified the abatement order. "An abatement is a present *suspension* of *all* proceedings in a suit. The case is held in suspended animation and may be revived when the reason for abatement is removed. During abatement, *the court and the parties are prohibited from proceeding in any manner.*" *Campbell v. Kosarek*, 44 S.W.3d 647, 650 (Tex. App.—Dallas 2001, pet. denied) (emphasis added) (internal citations omitted). Indeed, this Court has recognized that it is improper to dismiss a case that has been abated, but rather the trial court should "retain it suspended upon the docket, subject to be revived if and when the cause of abatement is removed." *Dyches v. Ellis*, 199 S.W.2d 694, 696 (Tex. Civ. App.—Austin 1947, no writ); *accord Messmer v. State Farm County Mut. Ins. Co.*, 972 S.W.2d 774, 778 (Tex. App.—Corpus Christi 1998, no pet); *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 527 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding); *America Online, Inc. v. Williams*, 958 S.W.2d 268, 272 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Permanente Med. Ass'n v. Johnson*, 917 S.W.2d 515,

517 (Tex. App.—Waco 1996, orig. proceeding); *Lumbermens Mut. Cas. Co. v. Garza*, 777 S.W.2d 198, 199 (Tex. App.—Corpus Christi 1989, orig. proceeding). However, courts have recognized an exception, stating that dismissal is proper when "a plaintiff fails to correct a defect or impediment to suit after an abatement has been granted." *3V, Inc. v JTS Enters., Inc.*, 40 S.W.3d 533, 540 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Garcia-Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 374 (Tex. App.—Corpus Christi 1988, no writ); *M&M Const. Co. v. Great Am. Ins. Co.*, 747 S.W.2d 552, 554-55(Tex. App.—Corpus Christi 1988, no writ).

Although *3V*, *Garcia-Marroquin*, and *M&M Construction* each *recognize* that an isolated situation could exist whereby dismissal during the abatement period would be appropriate, dismissal was not deemed proper in any of the cases. *3V*, 40 S.W.3d at 543-544; *Garcia-Marroquin*, 1 S.W.3d at 374; *M & M Constr.*, 747 S.W.3d at 555. Similarly, no exception applies here that would permit the district court to dismiss the case.

The order specified that the cause was abated "until such time as Plaintiffs have applied for the *correct zoning* to the City Council and have received a *final decision* from the City of Austin regarding that zoning application." (Emphasis added.) Friedland and MacFarlane disagree over what precise zoning status was required to satisfy the district-court order, and the order itself provides no guidance in this regard. All parties agree that MacFarlane was to exhaust her administrative remedies, but by affidavit, MacFarlane testified that she pursued CS zoning because it was the only zoning status that would not severely limit her business; thus, to MacFarlane, CS zoning was the "correct zoning" required by the abatement order.

11

Friedland asserted that a final ruling on *any zoning designation*, not specifically CS zoning, would satisfy the terms of the abatement order. Relying on this interpretation, Friedland argued that MacFarlane squandered an opportunity to satisfy the abatement order when she failed to act within 361 days from November 19, 1998, when the City tentatively approved CS-CO zoning. Friedland further relied on the testimony of Melton and Antonio Gonzales ("Gonzales"), the City's case manager in charge of MacFarlane's zoning application. Gonzales testified that CS-CO zoning allowed MacFarlane to fully operate her business. MacFarlane disagreed because there was no explicit written provision guaranteeing her the use of three-horsepower machinery required by her business, and Melton acknowledged that he would not be surprised if none of the documents before the district court stated that three-horsepower engines could be used because the City's zoning is "confusing." Taylor testified that Melton's informing him that the zoning process was complete would serve as the trigger mechanism for going to trial. However, by MacFarlane's interpretation of the abatement order, proper zoning was never obtained; thus the requisite event never occurred that would cause her to move the district court to lift the abatement order and set the cause for trial. MacFarlane's expectation that her case was still in a state of suspension until proper zoning was obtained was reasonable.

Friedland also argues that MacFarlane effectively abandoned her claims when she sold the property because she lacked standing to pursue a zoning change for the property and therefore could not satisfy the abatement order. Because an action is revived when the cause of abatement is removed, Friedland is incorrect. *Dyches*, 199 S.W.2d at 696. MacFarlane's alleged lack of standing

before the City to pursue the zoning change may have obviated the abatement but did not necessarily render her cause of action moot.

Furthermore, MacFarlane testified that she would have been leery of signing the conditional overlay's restrictive covenant because it "would limit our future abilities to market the property." She further observed that CS-CO zoning would "severely limit our business," precluding her from expanding and from conducting certain aspects of the business outside the building located on the property, as the outside portion of the property would remain zoned LR. Essentially, MacFarlane's affidavit indicated that pursuing CS-CO zoning through final passage would saddle her with a zoning status that would unacceptably inhibit her business practices.

We do not decide which party's construction of the abatement order is the most reasonable. The order is clearly subject to differing interpretations of what needed to occur to terminate the abatement. By any construction, MacFarlane's cause was still subject to the abatement order at the time is was dismissed. Under the facts of this case, we hold that the district court erred in dismissing MacFarlane's action without first reconsidering or lifting the abatement order.

### *MacFarlane's Diligence*

Friedland argues that MacFarlane admits that she took no affirmative action in the district court between the time that Melton requested additional funds—January 2000—and the time he filed his motion to dismiss—July 7, 2000,—thus reflecting a lack of diligence in prosecution on MacFarlane's part for at least this eight-month period. Friedland also urges this Court to examine the case's entire district-court history since its filing in 1995. The district-court order does not reflect a particular period of inaction on which the court based her decision to dismiss. *See Ellmossallamy*

13

*v. Huntsman*, 830 S.W.2d 299, 300 (Tex. App.—Houston [14th Dist.] 1992, no writ) (stating that reviewing court's focus must "essentially be directed at that period of time" on which trial court based its decision to dismiss). However, in order to place any particular period of inactivity in the proper perspective, we examine the context of the whole case. *Id.* (citing *Rotello*, 671 S.W.2d at 509; *Fedco Oil Co. v. Pride Refining Co.*, 787 S.W.2d 572, 573 (Tex. App.—Houston [14th Dist.] 1990, no writ)). The passage of time alone does not necessarily indicate a lack of diligence. *See, e.g.*, *Fedco*, 787 S.W.2d at 574-75 (holding that even though case had been pending for eight years, dismissal was abuse of discretion because record established appellant made diligent effort to bring case to trial).

We need not further discuss the circumstances surrounding the abatement order, other than to observe that MacFarlane's action was abated by the district court in January 1998 to allow her to seek a zoning change for her property. There was action by the City in November 1998 tentatively changing the property's zoning to a classification that MacFarlane now asserts was still unacceptable to her, but which had the effect of keeping her zoning-change application before the City at least until November 1999.

In December 1999, MacFarlane's attorney, was the victim of arson. Although he tried to handle his clients' business from a temporary location without complete access to his files, he was not able to return to his office until late March 2000 and still did not have full use of his files, many of which were in temporary storage. During January 2000, there was contact with Melton, which Taylor testified led him to believe that eighteen to twenty-two more weeks would be required to complete the zoning change.

14

Of significance here is the fact that the abatement order suspending activity in the case until "a final decision from the City of Austin regarding [the] zoning application" was still in place. We further observe that arson is not an everyday occurrence for a lawyer, and some latitude must be allowed for the disruption and confusion that a fire causes to the day-to-day operation of a law office. A trial court's right to dismiss a suit for failure to prosecute it with due diligence "is not an unbridled discretion, but a judicial discretion subject to review." *Ellmossallamy*, 830 S.W.2d at 301 (citing *William T. Jarvis Co. v. Wes-Tex Grain Co.*, 548 S.W.2d 775, 778 (Tex. Civ. App.—Waco 1977, writ ref'd n.r.e.)).

The specific and unusual circumstances of this case lead us to conclude that MacFarlane has demonstrated the diligence necessary to entitle her to her day in court.

## CONCLUSION

We sustain MacFarlane's second and third issues, reverse the district court's orders, and remand this cause to the district court for further proceedings consistent with this opinion.

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

Reversed and Remanded

Filed:   January 17, 2002

Do Not Publish