**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant,**

v.

**Kenneth L. KENDRICK, Appellee.**

No. 07–94–0110–CV.

Court of Appeals of Texas, Amarillo.

April 4, 1995.

Hampton, Meece & Kohn, John C. Hampton, Bryan, for appellant.

Law Offices of Lawrence R. Maxwell, Jr., Lawrence R. Maxwell, Jr. and Bridget Braithwaite, Dallas, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

Appellant Federal Deposit Insurance Corporation (FDIC) brings this appeal from an order dismissing its suit against appellee Kenneth L. Kendrick. In three points of error, the FDIC contends the trial court abused its discretion by: 1) dismissing the suit as no grounds existed for dismissing the suit for want of prosecution; 2) refusing to reinstate the case after the dismissal as good cause existed for maintaining the case on the court's docket; and 3) erred in entering orders dismissing the suit for want of prosecution inasmuch as such orders did not satisfy the requirements of a judgment and created confusion in the record. For reasons later stated, we affirm the judgment of the trial court.

The suit underlying this appeal originated as an action by the NCNB Texas National Bank (NCNB) against appellee to collect the unpaid balance of $104,000 due on a note payable to NCNB in the original principal amount of $122,000. The note matured on December 8, 1987; however, suit was not filed until November 19, 1991. Thereafter, NCNB transferred the note to the FDIC. The FDIC filed its Plea In Intervention and Notice of Substitution with the trial court on April 9, 1992 and, by order dated April 15, 1992, was substituted for NCNB as plaintiff in the suit.

In April 1992, appellee served the FDIC with his discovery requests. The completeness and manner of the FDIC and NCNB's

compliance with those requests is disputed. The record shows notices by the trial court setting trial dates of May 26, 1992, September 8, 1992, November 16, 1992, January 11, 1993, April 12, 1993, and July 26, 1993.

On October 22, 1992, the FDIC filed its Motion for Summary Judgment which was set for hearing on November 18, 1992. On November 10, 1992, appellee filed his motion to continue the hearing on the summary judgment motion and, in addition, requested that this case and another case involving the same parties be referred to mediation. On November 17, 1992, the FDIC filed its first amended petition. On November 23, 1992, appellee filed his supplemental response to the motion for summary judgment and, on December 9, 1992, the FDIC filed a second amended petition. On December 14, 1992, the trial court ordered mediation of this case and the other case involving the same parties.

On March 4, 1993, new counsel of record was substituted for the FDIC. Thereafter, in compliance with the court order, mediation continued through the summer and, after the drafting and redrafting of a proposed agreement, the parties entered into an agreement which was expressly made subject to the FDIC's approval and review. In its essence, the agreement provided that appellee would pay the FDIC $104,000 with a credit to be applied toward a debt which was the subject of another suit between the parties.

On August 4, 1993, the trial court informed the parties that the record reflected a docket entry of final disposition in the case but that no judgment had been furnished to the court for entry. The communication also notified the parties that the case was set for final disposition on October 8, 1993 at 9:00 a.m., and that "[u]nless final judgment [was] furnished to the court prior to such date, an order of dismissal [would] be entered with costs taxed against the party incurring same."

On October 4, 1993, the FDIC sent the trial court a letter which, after reciting the letter was intended "to request a continuance of the October 8th deadline for tendering settlement documents and Final Judgment," provided:

> The parties in this matter have agreed to this continuance and hereby jointly request the same. The parties do not request this continuance to cause delay or inconvenience to the Court, but because they have entered into good faith settlement negotiations. The parties are waiting for consideration of their settlement proposal by the proper FDIC committees. If such proposal is approved, litigation of this matter will not be necessary. Therefore, the parties request that the Court continue the hearing on Final Disposition for at least 30 days.

On the trial court's copy of this communication, there appears a written notation reading "Nov. 5th, 1993." Although in its brief, the FDIC refers to this notation as indicating a telephonic conference call from the court coordinator concerning the status of the case, other than the notation itself, nothing appears in the record explaining the cryptic notation. As far as the record shows, there was no communication between the trial court and counsel between October 4, 1993 and November 16, 1993, the date on which the court entered the dismissal order. This order provided, in relevant part:

> Be it remembered that on the 4th day of August 1993, the above case came on for hearing and, a rendition or announced settlement having been entered and more than thirty (30) days having elapsed since that time with no dispositive orders having been reduced to writing and presented to the Court, the Court presumes that counsel for the parties wish the Court to dismiss the instant cause with prejudice with costs to be taxed against the party by whom incurred, for all of which let execution issue, and to deny all relief to all parties not otherwise granted herein.

On December 3, 1993, the FDIC, pursuant to Rule 165a of the Texas Rules of Civil Procedure, filed a motion to reinstate the case on the court's docket. On January 13, 1994, after a hearing on the motion to reinstate, the trial court entered a "Nunc Pro Tunc Order of Dismissal" modifying the November 16, 1993 order to reflect that the dismissal was without prejudice. On Janu-

ary 19, 1994, the court then entered an order denying the FDIC's motion to reinstate, again stating that the dismissal was without prejudice.

■ In considering the FDIC's challenge to the trial court's action, we must begin with the recognition that a trial court not only has the inherent power to dismiss a cause for want of prosecution, *Bevil v. Johnson*, 157 Tex. 621, 307 S.W.2d 85, 87 (1957), it is expressly granted that power. Tex. R.Civ.P. 165a. However, that power is not unbridled as it rests in the exercise of sound judicial discretion, subject to review. On appeal, the trial court's judgment of dismissal will not be reversed unless, as a matter of law, the trial court clearly abused its discretion in taking its action. *Moore v. Armour & Co., Inc.*, 748 S.W.2d 327, 329 (Tex.App.— Amarillo 1988, no writ). The burden of proof rests upon a litigant asserting an abuse of discretion because there is a presumption that the action of the trial court was justified. *Fulmer v. Barfield*, 480 S.W.2d 413, 415 (Tex.Civ.App.—Tyler 1972, writ dism'd). In exercising its discretion, the trial court is entitled to consider the entire history of the case. *State v. Rotello*, 671 S.W.2d 507, 509 (Tex.1984).

There is a sound policy consideration for indulging the strong presumption that the action of a trial court in dismissing an action is justified. In the seminal case of *Southern Pacific Transportation Co. v. Stoot*, 530 S.W.2d 930 (Tex.1975), the Texas Supreme Court noted:

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility.

*Id.* at 931.

■ Finally, the test for determining whether the trial court abused its discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the trial court acted without reference to any guiding rules and principles, or whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In support of its challenge, the FDIC argues that the history of the case indicates there was substantial activity occurring in the case during its pendency. Both parties had engaged in discovery proceedings and good faith settlement negotiations, several trial settings had been obtained and the trial court was informed of the status of the settlement negotiations. Moreover, the FDIC argues, it was ready for trial.

Additionally, as an explanation for its difficulty and delay in evaluating the proposed settlement agreement, the FDIC points to the uncertainty existing, prior to March 9, 1994, as to whether the Texas four-year statute of limitations or the federal six-year statute was applicable to a case such as this one. Pointing out that appellee had pled that the four-year statute was applicable, the FDIC posits that although its case had clearly complied with the six-year statute, "a question existed as to the four-year statute." On March 9, 1994, the Texas Supreme Court in *Jackson v. Thweatt*, 883 S.W.2d 171 (Tex. 1994), held the federal six-year statute was applicable to successors in interest of the FDIC. The FDIC also points out that it was required to evaluate appellee's financial condition inasmuch as appellee was claiming a "two-for-one" credit in the settlement of this case for claims brought by the FDIC in a second suit against appellee that was pending in federal court. Thus, the FDIC reasons that an evaluation of the proposed settlement agreement required an evaluation of the law pertaining to limitations as well as the financial status of appellee in order to determine the fairness of the settlement.

The FDIC initially attacks the trial court's order on the basis that it never received a notice of the court's intention to dismiss as required by section 1 of Rule 165a. However, due process requirements are met when the trial court holds the same hearing on a motion to reinstate that an appellant would have received had the notice of intent to dismiss been given. *Knight v. Trent*, 739 S.W.2d 116, 119 (Tex.App.—San Antonio 1987, no writ); *Texas Society, Daughters of American Revolution, Inc. v. Estate of Hubbard*, 768 S.W.2d 858, 862 (Tex.App.—Texarkana 1989, no writ).

The FDIC also notes that the order signed by the trial court provided that the court "presume[d]" that counsel for the parties wanted the cause to be dismissed. It argues that such a presumption would necessarily require the admission of some supporting evidence and, as the trial court made such a factual determination without receiving any supporting evidence, the court abused its discretion and acted without reference to any guiding rules and principles.

In support of that proposition, the FDIC primarily relies upon the decision in *MJR Financing, Inc. v. Marshall*, 840 S.W.2d 5 (Tex.App.—Dallas 1992, no writ). The *MJR* case involved "death penalty" sanctions levied under Rule 215 of the Texas Rules of Civil Procedure for an alleged failure to comply with discovery requirements. In that case, the trial judge had levied sanctions against the appellant without affording it an opportunity to present evidence on what the appellate court denominated as "significant factual disputes." The appellate court thus held the appellant's due process rights had been violated and the trial judge had abused his discretion. *Id.* at 9–10. However, in this type of case, and under the authorities we have cited, after considering this case as we have noted above, we find that due process requirements were met by the hearing conducted under the FDIC's reinstatement motion.

In asserting the trial court erred, the FDIC places primary reliance upon *Ellmossallamy v. Huntsman*, 830 S.W.2d 299 (Tex. App.—Houston [14th Dist.] 1992, no writ), which it characterizes as "remarkably similar" to this one. That characterization requires a discussion of the case. In *Ellmossallamy*, the trial court had set the cause for jury trial in the month of February. On the date the cause was set, the appellee's counsel appeared and dictated into the record a settlement agreement. *Id.* at 300. When queried by the trial court as to whether he had the appellant's authority to make the representation to the court, the appellee's counsel confirmed that he had such authority and that he would prepare the judgment and "the settlement would be delivered before the following Monday and a compromise take-nothing judgment would be signed afterwards." *Id.* The next recorded activity occurred after the trial court's June notice to the parties placing the case upon the August 22 dismissal docket. On August 22, appellant filed a verified motion to retain in which he stated that he had misunderstood the terms of the settlement and withdrew his attorney's authorization to settle as soon as he comprehended its terms. The trial court denied this motion and dismissed the case. The appellant subsequently filed a motion to reinstate. During the October hearing on the motion to reinstate, the appellant's counsel informed the court he had attempted, but failed, to contact, appellant until June when appellant withdrew his consent. The trial court overruled the motion to reinstate. *Id.*

A divided appellate court reversed the trial court's dismissal. In arriving at their decision, the majority placed considerable reliance upon the fact that, presumably, both parties were ready for trial at the February trial setting, that prior to that date, appellant had pursued discovery continuously until the trial date, and that subsequent to the settlement announcement, neither party filed any motion to enforce the settlement and nothing appeared in the record after the settlement announcement in February until the dismissal notice to indicate the appellant was not ready for trial. *Id.* at 301. The dissent, however, noted the appellant had filed motions for continuance on prior trial settings, had avoided the last trial date by agreeing to a settlement, "reneged" on the settlement but failed to advise the trial court, waited two months after receiving the notice of dismissal

before he filed his motion to retain, and in that motion, failed to meet the "very specific requirements" set by the court. *Id.* at 302. In view of the well settled principles governing appellate review of case dismissals, the decision as to whether a trial court abused its discretion must be made on a case-by-case basis after consideration of each case history. We do not agree that the reasoning followed by the majority of the *Ellmossallamy* court, particularly in view of the strong and well reasoned dissent, is necessarily determinative of this case.

In the instant cause, at the hearing on the FDIC's motion to reinstate, its counsel testified that discovery proceedings had been conducted and that the FDIC was ready for trial at the time of the July trial setting. At that time, counsel notified the trial court of the proposed settlement, with the proviso, however, that the proposal was subject to approval by the proper committees of the FDIC and, in order for the committees to determine whether the settlement was appropriate, it was necessary to evaluate appellee's net worth. Counsel also commented that he had recommended that the FDIC agree, but "they could not determine what they (the FDIC) were going to do." Presumably, then, the proposed settlement agreement was submitted to the FDIC committees for their approval.

At the hearing, counsel acknowledged receipt of the trial court's August 4 notice which contained the admonition we have set out above, *i.e.*, "to prepare an order for the Court's review October 8" with the accompanying warning that the failure to do so prior to that date would result in dismissal. Presumably, counsel notified the FDIC of that admonition. However, the FDIC continued to deliberate its approval without any contact with, or report to, the trial court prior to October 4, 1993.

At that time, the FDIC, with the consent of appellee, submitted the October 4 letter to the trial court. In his testimony at the reinstatement hearing, FDIC's counsel stated that "at that time we (counsel for FDIC) estimated that the settlement would be either resolved one way or the other within on or about 30 days. It wasn't." FDIC's counsel also stated that his review of the trial court's file indicated that through some contact with an unnamed associate of his firm, the court apparently "instructed us (counsel) to make a report to the Court, an oral report to the Court, within 30 days. Apparently that happened in a phone call." However, he went on to say that no such request was ever reduced to any memo or tickler system in his firm. He assured the trial court that the FDIC's failure to make a status report was not the result of any conscious indifference or desire to ignore the court. However, at the time of the reinstatement hearing, because of appellee's contest of the motion to reinstate, counsel stated that the FDIC was no longer willing to go forward with the settlement and it now desired to try the case and was ready to do so. He offered no explanation as to why the FDIC, after months of deliberation, had not been able to decide whether or not to accept the settlement or proceed to trial.

Summarized, the record before the trial court shows that after several trial settings and considerable discovery proceedings, in July 1993, FDIC's counsel announced to the trial court that a tentative settlement agreement had been reached, subject to final approval by the various committees of the FDIC. On August 4, 1993, the trial court notified the parties that it expected the agreement to be consummated not later than October 8, 1993. Under this record, no further communication was had with the trial court until the October 4, 1993 letter from the FDIC which, with the permission of appellee, contained a request for a continuance of "at least 30 days" in order for the FDIC to continue its consideration of the settlement offer. Although no formal order granting the continuance was entered, a period in excess of thirty days elapsed without a decision by the FDIC regarding the settlement offer, thereby leading to the November 16, 1993 dismissal.

It is well established that neither settlement activity nor the passive attitude of opposing parties excuses a want of diligent prosecution. *Texas Society, Daughters of American Revolution, Inc.*, 768 S.W.2d at 860–61. After consideration of the entire

history of the case, a trial court may dismiss a case even if the plaintiff states it never intended to abandon its suit and that it is currently ready for trial. *Sustala v. El-Romman,* 712 S.W.2d 164, 166 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

Under the stringent rules governing our appellate review, we cannot say that the FDIC has carried its burden of showing the trial court acted without reference to any guiding rules and principles. There was no factual showing before the trial court as to why the FDIC could not make its decision within the rather lengthy time the settlement was under consideration. As far as this record shows, the clear warning given by the trial court in its August 4 notice did not expedite the FDIC's approval or rejection of the offer, nor did it result in a request for a trial setting. In fact, the only action resulting from the warning was the October 4 request for additional time for consideration. Reiterated, the fact that a trial judge may have acted within his discretionary authority in a manner different than an appellate justice might have acted in a similar circumstance is not sufficient to show an abuse of discretion. We must, therefore, overrule the FDIC's first and second points.

In its third point, the FDIC contends the existence of the three orders executed by the trial court creates confusion as to which order was the final order in the case. We disagree. The effect of the January 13 order was to modify the November 16 order's provision that the dismissal was with prejudice while the January 19 order clearly overruled the FDIC's motion to reinstate. In this connection, we note that the FDIC had no difficulty in complying with the time limits necessary to perfect this appeal. The FDIC's third point is overruled.

Accordingly, the judgment of the trial court is affirmed.