NO. 07-01-0359-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 26, 2002



______________________________




JOYCE MANNING AND DAN MANNING, APPELLANTS



V.



RONALD J. NORTH, M.D., APPELLEE




_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 92-539,417-A; HONORABLE SAM MEDINA, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 This appeal is engendered by the trial court's dismissal of the suit appellants Joyce
and Dan Manning filed against appellee Ronald J. North, M.D. In asserting their
challenge, appellants present three issues for our decision. Those three issues are: 1)
if the "conscious indifference" standard of Rule of Civil Procedure 165a(3) applies, did the
district court abuse its discretion in dismissing the case and in refusing to reinstate when
the Mannings showed more than "some excuse" in failing to promptly proceed, 2) if the
"due diligence" standard applies, by ignoring undisputed facts and ruling without adequate
review, did the district court abuse its discretion in holding that the Mannings were not
diligent, and 3) were the Mannings denied such due process that reversal is required. For
reasons we later recount, we affirm the judgment of the trial court.

 It is undisputed that the trial court dismissed the Mannings' case because of a
perceived want of prosecution. A trial court's authority to dismiss a case for want of
prosecution arises from two sources: 1) Rule 165a of the Rules of Civil Procedure, and
2) the court's inherent power. Villarreal v. San Antonio Truck & Equip. 994 S.W.2d 628,
630 (Tex. 1999); see also Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex. 1976).
A trial court may dismiss under Rule 165a upon the "failure of any party seeking affirmative
relief to appear for any hearing or trial of which the party had notice," Tex. R. Civ. P.
165a(1), or when a case is "not disposed of within the time standards promulgated by the
Supreme Court . . . ." Tex. R. Civ. P. 165a(2). (1) In addition, the common law vests the trial
court with the inherent power to dismiss independently of the Rules of Civil Procedure
when a plaintiff fails to prosecute his or her case with due diligence. Villarreal, 994 S.W.2d
at 630. 

 Even so, a party must be provided with notice and an opportunity to be heard before
a court may dismiss a case for want of prosecution under either Rule 165a or its inherent
authority. See Tex. R. Civ. P. 165a(1) (notice of the court's intention to dismiss and the
date and place of the dismissal hearing shall be sent by the clerk to each attorney of
record); General Elec. Co. v. Falcon Ridge Apartments, Joint Venture, 811 S.W.2d 942,
943 (Tex. 1991) (requiring notice for dismissals under Rule 165a); see also State v.
Rotello, 671 S.W.2d 507, 508-09 (Tex. 1984) (requiring notice for dismissals under the
court's inherent power). The failure to provide adequate notice of the trial court's intent
to dismiss for want of prosecution requires reversal. Villarreal, 994 S.W.2d at 630.

 The power of a trial court to dismiss for want of prosecution is not unbridled as it
rests in the exercise of sound judicial discretion, subject to review. Thus, on appeal, the
trial court's judgment of dismissal will not be reversed unless, as a matter of law, the trial
court clearly abused its discretion. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87
(1957); F.D.I.C. v. Kendrick, 897 S.W.2d 476, 479 (Tex.App.--Amarillo 1995, no writ). The
burden of proof rests on a litigant asserting an abuse of discretion. This is true because
there is a presumption that the action of the trial court was justified. Id. at 479. 

 A trial court abuses its discretion if it acts without reference to any guiding rules
and principles, or if its action is arbitrary or unreasonable under all the circumstances of
the particular case. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Garcia v.
Mireles, 14 S.W.3d 839, 842 (Tex.App.--Amarillo 2000, no pet). In exercising its
discretion, the trial court is entitled to consider the entire history of the case. Kendrick, 897
S.W.2d at 479 (citing Rotello, 671 S.W.2d at 509).

 In argument under their first issue, appellants note that this case does not involve
a trial court's dismissal of claims under Rule of Civil Procedure165a(1) for failure to appear
at a hearing or trial. They acknowledge that it "might involve" the trial court's authority to
dismiss under Rule of Civil Procedure 165a(2) for failure to comply with Supreme Court
timelines. They also comment that it "may also involve" the court's inherent powers to
manage its trial docket. Even so, they reason, the trial court's basis for dismissing
appellants' claims is actually not relevant to this appeal "for it involves the district court's
failure to reinstate the case under Rule 165a(3)." That is true, they argue, because Rule
165a(4) has specific provisions when a party seeks to reinstate a case on the trial docket,
and that portion of the rule determines the standard by which we must determine the
validity of the trial court's dismissal. Continuing, they quote Rule 165a(4):

 This dismissal and reinstatement procedure shall be cumulative of the rules
and laws governing any other procedures available to the parties in such
cases. The same reinstatement procedures and timetable are applicable to
all dismissals for want of prosecution including cases which are dismissed
pursuant to the court's inherent power, whether or not a motion to dismiss
has been filed.


They then refer to the portion of subsection 3 of Rule 165a which provides:


 The court shall reinstate the case upon finding after a hearing that the failure
of the party or his attorney was not intentional or the result of conscious
indifference but was due to an accident or mistake or that the failure has
been otherwise reasonably explained.


Appellants conclude that this standard is applicable and, in determining they had been
consciously indifferent, "the district court ignored undisputed evidence that presented far
more than some excuse for any delay." Citing Craddock v. Sunshine Bus Lines, 134 Tex.
388, 133 S.W.2d 124 (1939), appellants argue our Supreme Court has held that the
"conscious indifference" language of Rule 165a(3) is essentially the same as that for
setting aside a default judgment. They also argue, with citation of various cases, that the
cases are "legion" and hold that a party can overcome conscious indifference by providing
"some excuse, but not necessarily a good excuse" for a party's failure to act in a timely
manner. Again assuming that the "conscious indifference" test is applicable, appellants
conclude that the trial court was required to reinstate their lawsuit because the undisputed
evidence shows they had some excuse for any alleged delays in prosecuting the case.

 With commendable candor, appellants acknowledge the existence of some seven
published opinions by intermediate appellate courts (2) that hold the Craddock standard is
not applicable in instances where the lawsuit was dismissed pursuant to the court's
inherent powers. In doing so, they recognize the holding in those cases that the
reinstatement procedures in Rule 165a(3) are only available in cases in which the
dismissal occurred pursuant to Rule 165a(1) because of a party's failure to appear at a
hearing or a trial. Included in the cases cited is the decision by this court in Moore v.
Armour & Co., Inc., 748 S.W.2d 327 (Tex.App.--Amarillo 1988, no writ). Although
recognizing those decisions, appellants reason that "both the plain language of the rule
and considerations of equity cry out for a reevaluation of those prior holdings."

 We disagree. In Buchanan v. Masood, 631 S.W.2d 219 (Tex.App.--Amarillo 1982,
no writ), this court, citing Bevil, 307 S.W.2d at 87, noted the established rule that "[o]ne of
the fundamental powers possessed by a trial court is the power to dismiss a case when
a litigant refuses to prosecute the case." Buchanan, 631 S.W.2d at 221. We reiterated
the existence of that rule in Moore, 748 S.W.2d at 328, and Mireles, 14 S.W.3d at 842. 
In Bevil, our Supreme Court explicated that "even without statutory authority, a court has
the right to dismiss a suit for failure to prosecute it with due diligence." Bevil, 307 S.W.2d
at 87. As we have noted, in Villarreal and Williams, our Supreme Court has iterated and
reiterated that fundamental power of a trial court. That rule is so well-established that it
is not within the power of this intermediate appellate court to attempt to change it, nor do
we see any reason to attempt to do so. That being the case, we hold that the "conscious
indifference" standard applicable to Rule 165a cases is not applicable here. Appellants'
first issue is overruled.

 Having made that decision, it next becomes our duty to determine if the trial court
abused its discretion in dismissing appellants' case. In order to properly discuss that
question, we must relate something of the past history of that case. On August 3, 1992, 
appellants filed the underlying lawsuit against appellee and other defendants. As have the
parties, we will refer to those other defendants generically as the Dow defendants. In their
suit, appellants alleged that in December 1989, following the removal of both of Joyce's
breasts, appellee negligently performed a breast reconstruction procedure. The
allegations against the Dow defendants had to do with alleged defects in the implants,
which are not material to this appeal. 

 Appellee answered the suit and served interrogatories and a request for production
of certain documents on appellants. On December 3, 1992, appellants answered the
interrogatories and responded to the production requests. Under a Rule 11 Master
Discovery agreement, appellants filed a response to the master interrogatories in May of
1993. There were numerous depositions taken in the case by the Dow defendants and
various discovery documents exchanged. 

 On May 15, 1995, the defendant Dow Corning Corporation (DCC) filed a suggestion
of bankruptcy, and on August 7, 1995, citing the DCC bankruptcy, the Dow defendants
removed the case to the federal district court for the Northern District of Texas. Both
appellants and appellee filed motions to remand the case and in September of 1995, it was
remanded to the state district court. In May 1997, DCC transferred the claims against it
to the federal district court in Michigan. Appellants' suit against appellee remained in the
state court. 

 During the pendency of the suit, appellants had serious and continuing medical
problems and learned that their attorney also had serious medical problems. About May
1, 1996, because of their concern about the progress of the suit, appellants traveled to
Odessa, where their attorney resided. At that time, the attorney told them that he was
distraught because of a friend's death, and he was sick and broke. He asked them to pick
up their records because he no longer had space to store them. For the next two years,
appellants continued to have problems, including Joyce's serious and continuing health
problems, as well as the death of parents. They also had difficulty in communicating with
their attorney, who only occasionally had a legal staff available.

 In November of 1998, they received notice of a summary judgment motion filed by
appellee, but initially their attorney would not return their calls. The basis of appellee's
summary judgment motion was that there was no evidence that he was liable on
appellants' claims for products liability, breach of warranty, DTPA violations, fraud, and
intentional infliction of emotional distress. Eventually, their attorney did return a call and,
after appellants gave him some additional affidavits and information, filed an answer to the
motion. In December 1998, appellants' attorney filed an amended petition which added
a claim against appellee for negligence in administering an antibiotic to Joyce.

 In January and February of 1999, appellants filed more supplemental medical and
employment records in the summary judgment proceeding. On February 2, 1999, the
district court granted appellee's motion "as to all claims and causes of action alleged
against RONALD J. NORTH, M.D., by Plaintiffs JOYCE MANNING AND DAN MANNING
with the exception of Plaintiffs' claims based upon medical negligence." From December
1999 until April of 2001, Joyce continued to suffer various severe health problems that
necessitated treatment, including hospitalization and some surgeries. At the request of
appellants, and according to Joyce, their original attorney withdrew from the case on or
about July 11, 2000, although his motion to withdraw was not filed until September 14,
2000, and the court permitted him to withdraw on September 15, 2000. Subsequent to that
withdrawal, according to their testimony, appellants unsuccessfully contacted at least three
attorneys to see if they would handle their case. During this period of time, appellants
continued to suffer serious health problems.

 On March 6, 2001, the trial court sent appellants a Notice of Intent to Dismiss which,
in relevant part, stated:

 Court records indicate that this case is eligible for dismissal for want
of prosecution because it has been on file for more than eighteen months
and is not set for trial. The case will be DISMISSED FOR WANT OF
PROSECUTION, unless one of the following actions is taken within 45 days:


 1. A judgment is signed;


 2. A trial scheduling order is signed; or


 3. A verified motion to retain is filed. All motions to retain will be set for oral 
 hearing. Please contact the court coordinator for a hearing date.


On April 19, 2001, the trial court sent appellants an updated Notice of Intent to Dismiss
with a cover letter stating that the court had "mailed a notice back on March 6, 2001
without realizing we had a current address for the plaintiffs. It is only appropriate to give
them a chance to respond before the Court disposes [sic] the case." On April 19, 2001,
appellants filed their verified motion to retain in which they referred to their health
problems and difficulty in obtaining counsel, stated that they were talking to an attorney
about the case, and asked the court to retain the case on its docket for 90 days for them
to retain an attorney. In that motion, they recited that Dan was in the hospital and Joyce
was residing at the Residence Inn in Lubbock because of black mold at their house. Even
so, in the motion, they showed their address as 3102 69th Street in Lubbock. On April 30,
2001, appellee filed a motion to dismiss for want of prosecution. 

 Both the motion to retain and the motion to dismiss were set for hearing on May 25,
2001. Appellants made a personal appearance at the hearing, although they contend they
did not receive notice of the hearing until May 23 because the notice had been sent to their
home address instead of the Residence Inn. However, at the time of the hearing, they did
not make this complaint, nor did they ask for a continuance of the hearing. At the hearing,
the court heard testimony from Joyce and, at the conclusion of the hearing, granted the
motion to dismiss. At that time, a colloquy occurred concerning the address to which
notices to appellants should be sent. Joyce averred that their residence address was 3102
69th Street and that mail was forwarded from there to them. However, she finally
concluded that "[i]t might be better if we just have everything sent to the Residence Inn." 
On May 30, 2001, the trial court executed its order granting appellee's dismissal motion
and severing that portion of the underlying case from the remainder of the case.

 On June 29, 2001, appellants moved to reinstate their case and that motion was
heard on August 9, 2001. Appellants had counsel at the hearing, Joyce's testimony was
taken, and the court denied the motion to reinstate. In the course of the hearing, Joyce
informed the court that they had been able to retain a trial attorney if their motion was
granted.

 The standard by which we judge the trial court's dismissal is whether it abused its
discretion in concluding that appellants had not acted with due diligence in pursuing their
underlying suit. Veterans' Land Board v. Williams, 543 S.W.2d at 90; Moore, 748 S.W.2d
at 331. We agree with appellants that we, like them, have not found a case specifically
defining "due diligence" in the context of a trial court's dismissal of a lawsuit for want of
prosecution. We also agree with them that considering the definition of "due diligence" in
other contexts, a proper guide in this type of case would be to determine if the plaintiffs in
question have acted as an ordinary prudent person would have under the same or similar
circumstances. The answer to that question requires a factual determination by the trial
court not to be disturbed unless that court abused its discretion in arriving at its decision. 
As we have noted above, a trial court only abuses its discretion if it acts without reference
to any guiding rules and principles, or if its action is arbitrary or unreasonable under all the
circumstances of the particular case. Downer, 701 S.W.2d at 241-42. 

 Where the record does not contain findings of fact or conclusions of law, and the
dismissal order does not specify the reason for dismissal, the dismissal must be upheld
if it was proper under any legal theory supported by the record. Mireles, 14 S.W.3d at 842. 
If the dismissal order is silent, the plaintiffs seeking reinstatement must negate all possible
grounds for dismissal, including whether the dismissal was prompted by a lack of due
diligence in prosecuting the suit or for a violation of the Supreme Court's standards. 
Rampart Capital Corp. v. Maguire, 974 S.W.2d 195, 197 (Tex.App.--San Antonio 1998,
pet. denied). In assessing the trial court's action, we must also bear in mind the mere fact
that a trial judge may decide a matter within his or her discretionary authority in a different
manner than an appellate judge in a similar circumstance does not demonstrate that an
abuse of discretion has occurred. Southwestern Bell Tel. Co. v. Johnson, 389 S.W.2d
645, 648 (Tex. 1965); In re Rogers, 43 S.W.3d 20, 26 (Tex.App.--Amarillo 2001) (orig.
proceeding).

 In the seminal case of Southern Pacific Transportation Co. v. Stoot, 530 S.W.2d 930
(Tex. 1975), the court explicated the policy consideration for indulging the strong
presumption that the action of a trial court in dismissing is justified. In doing so, the court
noted:

 Delay haunts the administration of justice. It postpones the rectification of
wrong and the vindication of the unjustly accused. It crowds the dockets of
the courts, increasing the costs for all litigants, pressuring judges to take
short cuts, interfering with the prompt and deliberate disposition of those
causes in which all parties are diligent and prepared for trial, and
overhanging the entire process with the pall of disorganization and
insolubility.


Id. at 931. 


 The record reveals that the trial court's notice of intent to dismiss was sent some
eight and one-half years after the August 1992 filing of appellants' suit. This length of time
is sufficient to establish a rebuttable presumption that appellants have not prosecuted the
suit with due diligence. Appellants responded to the Dow defendants' master
interrogatories in May, 1993. No other significant activity occurred until 1995, at which
time DCC filed its suggestion of bankruptcy. The case was in federal court for two months
and was removed back to the state court. The next cognizable action in the state court
was when appellee filed his motion seeking summary judgment in September 1998. 
Appellants have suggested that part of the reason for the lack of activity was because of
the transfer to the federal court in Michigan of that part of the case relating to DCC
because of its bankruptcy proceedings. It is true that when a person or entity files a
bankruptcy proceeding, an automatic stay goes into effect and stays and abates any
judicial proceeding against that party. However, that stay only operates against that debtor
and does not operate against non-debtors or even co-debtors, co-tortfeasors, or co-defendants. GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir.1985);
In re Southwestern Bell Tel. Co., 35 S.W.3d 602, 604 (Tex. 2000). 

 Thus, this timeline shows that with the exception of the brief period when the case
was in the federal court for the Northern District of Texas, more than five years elapsed
with no significant activity on the part of appellants until the 1998 filing of appellee's
summary judgment motion. At that time, appellants responded to the motion and, as we
noted above, amended their petition to drop the negligence and product liability claims
against appellee and added a new medical malpractice claim. They also filed additional
discovery in late 1998 and early 1999. Appellants asserted that some settlement
negotiations between their original attorney and appellee's attorney occurred in 1999. No
further activity occurred in the case until the March 6, 2001 notice by the trial court of its
intent to dismiss. Based on this history of the case, absent some viable excuse for the
delays and inactivity, the trial court could reasonably have concluded that appellants had
failed to pursue the case with due diligence.

 In an effort to justify the lapses in activity, appellants have listed a lengthy history
of physical and health problems they suffered. However, the trial judge could reasonably
have concluded that in May 1996, when their attorney asked them to pick up their files for
storage, they should have known the case was not being properly pursued. Joyce
admitted that at that time they did not feel their attorney was "going forward" with the case.
It was also within his discretion to consider the testimony about appellants' health and
hospitalization problems and to make the factual resolution that those problems were not
sufficient to continuously prevent them from securing proper representation to pursue the
case. Suffice it to say that, under the record before it, the trial court did not abuse its
discretion in dismissing the case. Appellants' second issue is overruled.

 Appellants next contend that they did not receive proper notice of the dismissal
hearing and that failure prejudiced their ability to properly present their case and thus
denied them due process requiring reversal. However, appellants appeared at the hearing
and, as we have noted, did not ask for a continuance because of any deficiency in their
notice. When a party participates in a hearing without notifying the court of any complaint,
that party has waived its right to object to a lack of notice and may not raise the question
for the first time on appeal. Wyatt v. Furr's Supermarkets, Inc., 908 S.W.2d 266, 270 (Tex.
App.--El Paso 1995, writ denied); Negrini v. Beale, 822 S.W.2d 822, 823-24 (Tex.App.--Houston [14th Dist.] 1992, no writ).

 Moreover, due process requirements are met when the trial court, as it did here,
holds the same hearing on a motion to reinstate that an appellant would have received had
the notice of intent to dismiss been given. Kendrick, 897 S.W.2d at 480. Here, at the
hearing on their motion to reinstate, appellants appeared with counsel and participated in
the hearing. That being so, appellants were not denied due process. Appellants' third
issue is overruled.

 In sum, all of appellants' issues are overruled, and the judgment of the trial court
is affirmed. 


 John T. Boyd

 Chief Justice


Publish.
1. Rule 6 of the Rules of Judicial Administration provides that civil jury trials must be
disposed of within 18 months from the appearance date. See Tex. R. Jud. Admin. 6,
reprinted in Tex. Gov't Code Ann. tit. 2, subtit. F app. (Vernon 1998).
2. Appellants posit that those decisions were made "with little analysis or support."



0in;margin-bottom:.0001pt;
text-align:center;line-height:normal'>IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 

JULY 18, 2011

__________________________

 

PAUL
F. ROSALES,  

 

                                                                                         Appellant


v.

 

THE STATE OF
TEXAS,  

 

                                                                                         Appellee

__________________________

 

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2009-425,826; HONORABLE CECIL G. PURYEAR,
PRESIDING

 

__________________________

 

Memorandum Opinion

__________________________

 

Before QUINN, C.J., HANCOCK,
J., and BOYD, S.J.[1]

            After pleading guilty to the offense
before a jury, Paul F. Rosales was convicted of burglarizing a habitation.  He then tried the issue of punishment to the same
jury, which eventually levied a sentence of fifty years in prison.  The two issues before us concern appellants
Fifth Amendment right to remain silent and the States comment upon appellants
refusal to waive that right.  The comment
was made during the punishment phase of the trial, again, after appellant had
already pled guilty.   We overrule the
issues and affirm the judgment. 

            The colloquy between the prosecutor
and witness occurred as follows:

Q.  Now, did you
and  decide to Mirandize this Defendant and also the passenger?

 

A.   
 After Investigator McAdoo got to the scene.

Q. 
Okay.  And who is Anthony McAdoo?

A.  He is a
criminal investigator in our Investigations Division.  He was the on-call investigator and he was
sent out to the scene.

 

Q.  And when we
talk about mirandizing someone, were talking about if you want to waive your
rights and speak to law enforcement, someone can  you know, you can hire an
attorney if you cant afford one, you have the right to talk to us or not; is
that correct?

 

A.   
 Yes, sir.

Q.  I mean, its
a little bit more detailed than that, but thats what the Miranda warnings are;
is that correct?

 

A.   
 Yes, sir. 


Q.  Did either
Jesus or this Defendant ever waive their rights and speak to you?

 

A. 
No, they refused.  

Q. 
Okay.  

Thereafter,
appellants counsel sought leave to approach the bench.  Upon receiving such leave, counsel
stated:  . . . at this time I believe
that is a comment on his post-arrest right to remain silent, and it goes to his
failure to provide a defense and shifts the burden.  The trial court overruled the purported
objection.[2]

            A defendant must timely object to a
purported comment about his decision to remain silent to preserve the error for
review.  Salazar v. State, 131 S.W.3d 210, 214 (Tex. App.Fort
Worth 2004, pet. refd); Maxson v. State, 79 S.W.3d 74, 76 (Tex. App.
Texarkana 2002, pet. refd).  To be
timely, the objection must be uttered as soon as the ground for objection
became apparent.  Neal
v. State, 256 S.W.3d
264, 279  (Tex. Crim. App. 2008).  Waiting until after the question has been
asked and answered while failing to show any legitimate reason for the delay
does not satisfy the requirement.  Dinkins
v. State, 894 S.W.2d 330,
355 (Tex. Crim. App. 1995).  And, that is
what occurred here.  It is clear that the
prosecutor was broaching, for some reason, the topic of remaining silent and
ones right to do so.  It is also clear
that the foregoing was a prelude to the witness being asked if appellant waived
his right to remain silent.  Why
appellant opted to withhold objection until the question was answered is
unexplained.  So, under these
circumstances, we conclude that appellant neglected to satisfy the requirement
that he preserved the issues for review by timely objecting.  Consequently, the issues before us were
waived.[3]   

            

Accordingly, the judgment is affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

Do
not publish.











[1]John T. Boyd, Senior Justice, sitting by assignment.





[2]Appellants
quotation of the pertinent colloquy between the prosecutor and witness is
inaccurate.  It indicates that he
objected to the States effort to offer testimony commenting upon appellants
decision to remain silent before the law enforcement officer was asked if
appellant waived the right.  The record,
however, discloses that appellants counsel said nothing until after the question was asked and
answered.  This distinction is of import,
as we will illustrate, supra. 

 





[3]Even
if not waived, we note that when a defendant pleads guilty, he admits the
existence of all facts necessary to establish his guilt and the introduction of
evidence by the State is to permit a judge or jury to exercise its discretion
in the assessment of punishment.  Carroll v. State, 975
S.W.2d 630, 631-32 (Tex. Crim. App. 1998).  While it is true that a constitutional
privilege against self-incrimination still exists at the punishment phase of
trial, Carroll v. State, 42
S.W.3d 129, 132 (Tex. Crim. App. 2001), the entry of an accuseds
guilty plea diminishes the force of his assertion that his post-arrest silence
constitutes a right against self-incrimination and goes only to the issue of
punishment and not guilt.  See Price v. State, 640 S.W.2d 673, 675 (Tex. App.Houston [14th
Dist.] 1982, no pet.) (quoting Williams v. State, 607 S.W.2d 577, 579 (Tex.
Crim. App. 1980)).  This is particularly
true in light of appellants complaints that the reference to his post-arrest
silence went to his failure to provide a defense and shift[ed] the burden.