NO. 07-01-0359-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 26, 2002

_____


JOYCE MANNING AND DAN MANNING, APPELLANTS

V.

RONALD J. NORTH, M.D., APPELLEE


_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 92-539,417-A; HONORABLE SAM MEDINA, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

This appeal is engendered by the trial court's dismissal of the suit appellants Joyce and Dan Manning filed against appellee Ronald J. North, M.D. In asserting their challenge, appellants present three issues for our decision. Those three issues are: 1) if the "conscious indifference" standard of Rule of Civil Procedure 165a(3) applies, did the district court abuse its discretion in dismissing the case and in refusing to reinstate when

the Mannings showed more than "some excuse" in failing to promptly proceed, 2) if the "due diligence" standard applies, by ignoring undisputed facts and ruling without adequate review, did the district court abuse its discretion in holding that the Mannings were not diligent, and 3) were the Mannings denied such due process that reversal is required. For reasons we later recount, we affirm the judgment of the trial court.

It is undisputed that the trial court dismissed the Mannings' case because of a perceived want of prosecution. A trial court's authority to dismiss a case for want of prosecution arises from two sources: 1) Rule 165a of the Rules of Civil Procedure, and 2) the court's inherent power. *Villarreal v. San Antonio Truck & Equip.* 994 S.W.2d 628, 630 (Tex. 1999); *see also Veterans' Land Bd. v. Williams*, 543 S.W.2d 89, 90 (Tex. 1976). A trial court may dismiss under Rule 165a upon the "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," Tex. R. Civ. P. 165a(1), or when a case is "not disposed of within the time standards promulgated by the Supreme Court . . . ." Tex. R. Civ. P. 165a(2).[1] In addition, the common law vests the trial court with the inherent power to dismiss independently of the Rules of Civil Procedure when a plaintiff fails to prosecute his or her case with due diligence. *Villarreal*, 994 S.W.2d at 630.

---

[1]Rule 6 of the Rules of Judicial Administration provides that civil jury trials must be disposed of within 18 months from the appearance date. *See* Tex. R. Jud. Admin. 6, reprinted in Tex. Gov't Code Ann. tit. 2, subtit. F app. (Vernon 1998).

Even so, a party must be provided with notice and an opportunity to be heard before a court may dismiss a case for want of prosecution under either Rule 165a or its inherent authority. *See* Tex. R. Civ. P. 165a(1) (notice of the court's intention to dismiss and the date and place of the dismissal hearing shall be sent by the clerk to each attorney of record); *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 943 (Tex. 1991) (requiring notice for dismissals under Rule 165a); *see also State v. Rotello*, 671 S.W.2d 507, 508-09 (Tex. 1984) (requiring notice for dismissals under the court's inherent power). The failure to provide adequate notice of the trial court's intent to dismiss for want of prosecution requires reversal. *Villarreal*, 994 S.W.2d at 630.

The power of a trial court to dismiss for want of prosecution is not unbridled as it rests in the exercise of sound judicial discretion, subject to review. Thus, on appeal, the trial court's judgment of dismissal will not be reversed unless, as a matter of law, the trial court clearly abused its discretion. *Bevil v. Johnson*, 157 Tex. 621, 307 S.W.2d 85, 87 (1957); *F.D.I.C. v. Kendrick*, 897 S.W.2d 476, 479 (Tex.App.--Amarillo 1995, no writ). The burden of proof rests on a litigant asserting an abuse of discretion. This is true because there is a presumption that the action of the trial court was justified. *Id.* at 479.

A trial court abuses its discretion if it acts without reference to any guiding rules and principles, or if its action is arbitrary or unreasonable under all the circumstances of the particular case. *Downer v. Aquamarine Operators,* Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Garcia* v.

3

*Mireles,* 14 S.W.3d 839, 842 (Tex.App.--Amarillo 2000, no pet). In exercising its discretion, the trial court is entitled to consider the entire history of the case. *Kendrick*, 897 S.W.2d at 479 (*citing Rotello,* 671 S.W.2d at 509).

In argument under their first issue, appellants note that this case does not involve a trial court's dismissal of claims under Rule of Civil Procedure165a(1) for failure to appear at a hearing or trial. They acknowledge that it "might involve" the trial court's authority to dismiss under Rule of Civil Procedure 165a(2) for failure to comply with Supreme Court timelines. They also comment that it "may also involve" the court's inherent powers to manage its trial docket. Even so, they reason, the trial court's basis for dismissing appellants' claims is actually not relevant to this appeal "for it involves the district court's failure to *reinstate* the case under Rule 165a(3)." That is true, they argue, because Rule 165a(4) has specific provisions when a party seeks to reinstate a case on the trial docket, and that portion of the rule determines the standard by which we must determine the validity of the trial court's dismissal. Continuing, they quote Rule 165a(4):

> This dismissal and reinstatement procedure shall be cumulative of the rules and laws governing any other procedures available to the parties in such cases. The same reinstatement procedures and timetable are applicable to all dismissals for want of prosecution including cases which are dismissed pursuant to the court's inherent power, whether or not a motion to dismiss has been filed.

They then refer to the portion of subsection 3 of Rule 165a which provides:

4

> The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

Appellants conclude that this standard is applicable and, in determining they had been consciously indifferent, "the district court ignored undisputed evidence that presented far more than some excuse for any delay." Citing *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939), appellants argue our Supreme Court has held that the "conscious indifference" language of Rule 165a(3) is essentially the same as that for setting aside a default judgment. They also argue, with citation of various cases, that the cases are "legion" and hold that a party can overcome conscious indifference by providing "some excuse, but not necessarily a good excuse" for a party's failure to act in a timely manner. Again assuming that the "conscious indifference" test is applicable, appellants conclude that the trial court was required to reinstate their lawsuit because the undisputed evidence shows they had some excuse for any alleged delays in prosecuting the case.

With commendable candor, appellants acknowledge the existence of some seven published opinions by intermediate appellate courts[2] that hold the *Craddock* standard is not applicable in instances where the lawsuit was dismissed pursuant to the court's inherent powers. In doing so, they recognize the holding in those cases that the reinstatement procedures in Rule 165a(3) are only available in cases in which the dismissal occurred pursuant to Rule 165a(1) because of a party's failure to appear at a

---

[2]Appellants posit that those decisions were made "with little analysis or support."

hearing or a trial. Included in the cases cited is the decision by this court in *Moore v. Armour & Co., Inc.,* 748 S.W.2d 327 (Tex.App.--Amarillo 1988, no writ). Although recognizing those decisions, appellants reason that "both the plain language of the rule and considerations of equity cry out for a reevaluation of those prior holdings."

We disagree. In *Buchanan v. Masood*, 631 S.W.2d 219 (Tex.App.--Amarillo 1982, no writ), this court, citing *Bevil,* 307 S.W.2d at 87, noted the established rule that "[o]ne of the fundamental powers possessed by a trial court is the power to dismiss a case when a litigant refuses to prosecute the case." *Buchanan*, 631 S.W.2d at 221. We reiterated the existence of that rule in *Moore*, 748 S.W.2d at 328, and *Mireles*, 14 S.W.3d at 842. In *Bevil,* our Supreme Court explicated that "even without statutory authority, a court has the right to dismiss a suit for failure to prosecute it with due diligence." *Bevil*, 307 S.W.2d at 87. As we have noted, in *Villarreal* and *Williams,* our Supreme Court has iterated and reiterated that fundamental power of a trial court. That rule is so well-established that it is not within the power of this intermediate appellate court to attempt to change it, nor do we see any reason to attempt to do so. That being the case, we hold that the "conscious indifference" standard applicable to Rule 165a cases is not applicable here. Appellants' first issue is overruled.

Having made that decision, it next becomes our duty to determine if the trial court abused its discretion in dismissing appellants' case. In order to properly discuss that question, we must relate something of the past history of that case. On August 3, 1992,

6

appellants filed the underlying lawsuit against appellee and other defendants. As have the parties, we will refer to those other defendants generically as the Dow defendants. In their suit, appellants alleged that in December 1989, following the removal of both of Joyce's breasts, appellee negligently performed a breast reconstruction procedure. The allegations against the Dow defendants had to do with alleged defects in the implants, which are not material to this appeal.

Appellee answered the suit and served interrogatories and a request for production of certain documents on appellants. On December 3, 1992, appellants answered the interrogatories and responded to the production requests. Under a Rule 11 Master Discovery agreement, appellants filed a response to the master interrogatories in May of 1993. There were numerous depositions taken in the case by the Dow defendants and various discovery documents exchanged.

On May 15, 1995, the defendant Dow Corning Corporation (DCC) filed a suggestion of bankruptcy, and on August 7, 1995, citing the DCC bankruptcy, the Dow defendants removed the case to the federal district court for the Northern District of Texas. Both appellants and appellee filed motions to remand the case and in September of 1995, it was remanded to the state district court. In May 1997, DCC transferred the claims against it to the federal district court in Michigan. Appellants' suit against appellee remained in the state court.

During the pendency of the suit, appellants had serious and continuing medical problems and learned that their attorney also had serious medical problems. About May 1, 1996, because of their concern about the progress of the suit, appellants traveled to Odessa, where their attorney resided. At that time, the attorney told them that he was distraught because of a friend's death, and he was sick and broke. He asked them to pick up their records because he no longer had space to store them. For the next two years, appellants continued to have problems, including Joyce's serious and continuing health problems, as well as the death of parents. They also had difficulty in communicating with their attorney, who only occasionally had a legal staff available.

In November of 1998, they received notice of a summary judgment motion filed by appellee, but initially their attorney would not return their calls. The basis of appellee's summary judgment motion was that there was no evidence that he was liable on appellants' claims for products liability, breach of warranty, DTPA violations, fraud, and intentional infliction of emotional distress. Eventually, their attorney did return a call and, after appellants gave him some additional affidavits and information, filed an answer to the motion. In December 1998, appellants' attorney filed an amended petition which added a claim against appellee for negligence in administering an antibiotic to Joyce.

In January and February of 1999, appellants filed more supplemental medical and employment records in the summary judgment proceeding. On February 2, 1999, the district court granted appellee's motion "as to all claims and causes of action alleged

8

against RONALD J. NORTH, M.D., by Plaintiffs JOYCE MANNING AND DAN MANNING with the exception of Plaintiffs' claims based upon medical negligence." From December 1999 until April of 2001, Joyce continued to suffer various severe health problems that necessitated treatment, including hospitalization and some surgeries. At the request of appellants, and according to Joyce, their original attorney withdrew from the case on or about July 11, 2000, although his motion to withdraw was not filed until September 14, 2000, and the court permitted him to withdraw on September 15, 2000. Subsequent to that withdrawal, according to their testimony, appellants unsuccessfully contacted at least three attorneys to see if they would handle their case. During this period of time, appellants continued to suffer serious health problems.

On March 6, 2001, the trial court sent appellants a Notice of Intent to Dismiss which, in relevant part, stated:

> Court records indicate that this case is eligible for dismissal for want of prosecution because it has been on file for more than eighteen months and is not set for trial. The case will be DISMISSED FOR WANT OF PROSECUTION, unless one of the following actions is taken within 45 days:
>
> 1. A judgment is signed;
>
> 2. A trial scheduling order is signed; or
>
> 3. A verified motion to retain is filed. All motions to retain will be set for oral hearing. **Please contact the court coordinator for a hearing date**.

On April 19, 2001, the trial court sent appellants an updated Notice of Intent to Dismiss with a cover letter stating that the court had "mailed a notice back on March 6, 2001

without realizing we had a current address for the plaintiffs. It is only appropriate to give them a chance to respond before the Court disposes [sic] the case." On April 19, 2001, appellants filed their verified motion to retain in which they referred to their health problems and difficulty in obtaining counsel, stated that they were talking to an attorney about the case, and asked the court to retain the case on its docket for 90 days for them to retain an attorney. In that motion, they recited that Dan was in the hospital and Joyce was residing at the Residence Inn in Lubbock because of black mold at their house. Even so, in the motion, they showed their address as 3102 69th Street in Lubbock. On April 30, 2001, appellee filed a motion to dismiss for want of prosecution.

Both the motion to retain and the motion to dismiss were set for hearing on May 25, 2001. Appellants made a personal appearance at the hearing, although they contend they did not receive notice of the hearing until May 23 because the notice had been sent to their home address instead of the Residence Inn. However, at the time of the hearing, they did not make this complaint, nor did they ask for a continuance of the hearing. At the hearing, the court heard testimony from Joyce and, at the conclusion of the hearing, granted the motion to dismiss. At that time, a colloquy occurred concerning the address to which notices to appellants should be sent. Joyce averred that their residence address was 3102 69th Street and that mail was forwarded from there to them. However, she finally concluded that "[i]t might be better if we just have everything sent to the Residence Inn." On May 30, 2001, the trial court executed its order granting appellee's dismissal motion and severing that portion of the underlying case from the remainder of the case.

10

On June 29, 2001, appellants moved to reinstate their case and that motion was heard on August 9, 2001. Appellants had counsel at the hearing, Joyce's testimony was taken, and the court denied the motion to reinstate. In the course of the hearing, Joyce informed the court that they had been able to retain a trial attorney if their motion was granted.

The standard by which we judge the trial court's dismissal is whether it abused its discretion in concluding that appellants had not acted with due diligence in pursuing their underlying suit. *Veterans' Land Board v. Williams*, 543 S.W.2d at 90; *Moore*, 748 S.W.2d at 331. We agree with appellants that we, like them, have not found a case specifically defining "due diligence" in the context of a trial court's dismissal of a lawsuit for want of prosecution. We also agree with them that considering the definition of "due diligence" in other contexts, a proper guide in this type of case would be to determine if the plaintiffs in question have acted as an ordinary prudent person would have under the same or similar circumstances. The answer to that question requires a factual determination by the trial court not to be disturbed unless that court abused its discretion in arriving at its decision. As we have noted above, a trial court only abuses its discretion if it acts without reference to any guiding rules and principles, or if its action is arbitrary or unreasonable under all the circumstances of the particular case. *Downer*, 701 S.W.2d at 241-42.

Where the record does not contain findings of fact or conclusions of law, and the dismissal order does not specify the reason for dismissal, the dismissal must be upheld

11

if it was proper under any legal theory supported by the record. *Mireles*, 14 S.W.3d at 842. If the dismissal order is silent, the plaintiffs seeking reinstatement must negate all possible grounds for dismissal, including whether the dismissal was prompted by a lack of due diligence in prosecuting the suit or for a violation of the Supreme Court's standards. *Rampart Capital Corp. v. Maguire*, 974 S.W.2d 195, 197 (Tex.App.--San Antonio 1998, pet. denied). In assessing the trial court's action, we must also bear in mind the mere fact that a trial judge may decide a matter within his or her discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965); *In re Rogers*, 43 S.W.3d 20, 26 (Tex.App.--Amarillo 2001) (orig. proceeding).

In the seminal case of *Southern Pacific Transportation Co. v. Stoot*, 530 S.W.2d 930 (Tex. 1975), the court explicated the policy consideration for indulging the strong presumption that the action of a trial court in dismissing is justified. In doing so, the court noted:

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility.

*Id.* at 931.

12

The record reveals that the trial court's notice of intent to dismiss was sent some eight and one-half years after the August 1992 filing of appellants' suit. This length of time is sufficient to establish a rebuttable presumption that appellants have not prosecuted the suit with due diligence. Appellants responded to the Dow defendants' master interrogatories in May, 1993. No other significant activity occurred until 1995, at which time DCC filed its suggestion of bankruptcy. The case was in federal court for two months and was removed back to the state court. The next cognizable action in the state court was when appellee filed his motion seeking summary judgment in September 1998. Appellants have suggested that part of the reason for the lack of activity was because of the transfer to the federal court in Michigan of that part of the case relating to DCC because of its bankruptcy proceedings. It is true that when a person or entity files a bankruptcy proceeding, an automatic stay goes into effect and stays and abates any judicial proceeding against that party. However, that stay only operates against that debtor and does not operate against non-debtors or even co-debtors, co-tortfeasors, or co-defendants. *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 716 (5th Cir.1985); *In re Southwestern Bell Tel. Co.,* 35 S.W.3d 602, 604 (Tex. 2000).

Thus, this timeline shows that with the exception of the brief period when the case was in the federal court for the Northern District of Texas, more than five years elapsed with no significant activity on the part of appellants until the 1998 filing of appellee's summary judgment motion. At that time, appellants responded to the motion and, as we noted above, amended their petition to drop the negligence and product liability claims

13

against appellee and added a new medical malpractice claim. They also filed additional discovery in late 1998 and early 1999. Appellants asserted that some settlement negotiations between their original attorney and appellee's attorney occurred in 1999. No further activity occurred in the case until the March 6, 2001 notice by the trial court of its intent to dismiss. Based on this history of the case, absent some viable excuse for the delays and inactivity, the trial court could reasonably have concluded that appellants had failed to pursue the case with due diligence.

In an effort to justify the lapses in activity, appellants have listed a lengthy history of physical and health problems they suffered. However, the trial judge could reasonably have concluded that in May 1996, when their attorney asked them to pick up their files for storage, they should have known the case was not being properly pursued. Joyce admitted that at that time they did not feel their attorney was "going forward" with the case. It was also within his discretion to consider the testimony about appellants' health and hospitalization problems and to make the factual resolution that those problems were not sufficient to continuously prevent them from securing proper representation to pursue the case. Suffice it to say that, under the record before it, the trial court did not abuse its discretion in dismissing the case. Appellants' second issue is overruled.

Appellants next contend that they did not receive proper notice of the dismissal hearing and that failure prejudiced their ability to properly present their case and thus denied them due process requiring reversal. However, appellants appeared at the hearing

14

and, as we have noted, did not ask for a continuance because of any deficiency in their notice. When a party participates in a hearing without notifying the court of any complaint, that party has waived its right to object to a lack of notice and may not raise the question for the first time on appeal. *Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266, 270 (Tex. App.--El Paso 1995, writ denied); *Negrini v. Beale*, 822 S.W.2d 822, 823-24 (Tex.App.--Houston [14th Dist.] 1992, no writ).

Moreover, due process requirements are met when the trial court, as it did here, holds the same hearing on a motion to reinstate that an appellant would have received had the notice of intent to dismiss been given. *Kendrick,* 897 S.W.2d at 480. Here, at the hearing on their motion to reinstate, appellants appeared with counsel and participated in the hearing. That being so, appellants were not denied due process. Appellants' third issue is overruled.

In sum, all of appellants' issues are overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Publish.